FINE *et al.*, Respondents, v. THE ST. LOUIS PUBLIC SCHOOLS *et al.*, Appellants.

1. The inhabitants of the city of St. Louis are incompetent jurors in a case in which the city is interested as party; for example, in a case in which the Board of President and Directors of the St. Louis Public Schools is a party. In such case the court should disregard the special act of March 5, 1855, (Sess. Acts, 1855, p. 527,) and direct the summoning, by special venire, of a jury from that portion of the county outside of the city limits.
2. The provision of the act regulating executions (R. C. 1845, p. 481, § 28,) directing the sheriff to divide real estate levied on and sell so much thereof as will be sufficient to satisfy the execution, is directory; a violation of its injunctions will not render the sale void.
3. Recitals in a deed of conveyance are not evidence in behalf of the persons claiming under the deed.
4. By the Spanish law a person might divest himself of title to his immovable estate by abandoning it; should he depart from it with the intention that it should be no longer his, this would constitute an abandonment. The question of abandonment is one of fact, of intent, to be determined by the jury from all the circumstances of the case.
5. An instruction given to a jury is erroneous if it is calculated to mislead them by inducing them to attach undue importance to a portion of the testimony and to divert their attention from other facts entitled to consideration. Instructions should not amount to a commentary on the evidence.
6. To establish a title to land by virtue of a confirmation by the act of Congress of June 13, 1812, it is not necessary to show any documentary title, or any permission to occupy, or any other title emanating from the Spanish government; proof of inhabitation, cultivation or possession is sufficient.

7. It would be improper in an instruction to indicate to the jury that, in a case where the claim of the party was based upon possession and cultivation alone, testimony of less weight would be sufficient to make out an abandonment, than in a case where the claim was evidenced by a documentary title of some kind emanating from the Spanish government.

*Appeal from St. Louis Circuit Court.*

This is the same case which was heretofore in the supreme court. (See Fine v. St. Louis Public Schools, 23 Mo. 570.) The plaintiffs claim title to an undivided interest in the premises, a lot of one by forty arpens in the St. Louis common field, as heirs and legal representatives of Philip Fine, to whom said lot is alleged to have been confirmed by the act of Congress of June 13, 1812. Evidence was adduced by plaintiffs to show that said Fine cultivated and possessed the lot in controversy prior to December 20, 1803, and up to the time of the falling down of the fence, about six years before the change of the government. He then removed from St. Louis to the mouth of the Meramec river and continued to reside there until his death. The defendants adduced in evidence a designation and setting apart of the land in controversy for the support of schools. The remaining facts sufficiently appear in the opinion of the court.

The court gave the following instructions at the instance of the plaintiffs: " 1. If the jury believe from the evidence that the lot described in the petition was one of a series of lots lying adjoining to each other, and having the same general range and uniform depth of forty arpens, and that Philip Fine, prior to December 20th, 1803, cultivated this lot in different parts thereof, claiming the whole, and while so cultivating it was an inhabitant of the then town or village of St. Louis; and that he was the last cultivator thereof before December 20th, 1803, and continued to claim the same until June 13th, 1812, they should find for the plaintiff. 2. And if the jury believe from the evidence that Philip Fine did cultivate the lot in controversy, as above stated, they should presume that he rightfully claimed it, when he so cultivated

it, and always afterwards claimed it until the contrary be proven."

The instructions given by the court, on its own motion, are set forth below in the opinion of the court.

The court gave the following two instructions at the instance of the defendants: "1. If the jury believe from the evidence that the land in controversy is not the same land that is said to have been cultivated by Philip Fine prior to the 20th December, 1803, they will find for the defendants. 2. Whatever may have been the right, title or claim of Philip Fine to the land in question, before the change of government, if the jury find from the evidence that he abandoned the same, the jury ought to find a verdict for the defendants. By abandonment is meant the quitting of the possession of the lot, with the intention that it should be no longer the property of the possessor."

The following instructions asked by the defendants were refused: "1. There is no evidence before the jury competent to prove that the tract of land in question, as described in the petition, did belong to Philip Fine, at any time, on or before the 20th day of December, 1803. 2. By the Spanish law, in force here until the change of government, the bare fact of cultivation or possession of a piece of land gave to the possessor or cultivator no right, title or claim to the land; on the contrary, it constituted him a trespasser. 3. If, during the existence of the Spanish government here, the land in question did belong to Philibert Gainon (or Laurent Rouge), the plaintiffs here can not recover in this action without showing a title derived from the said Gaignon (or Rouge), or showing that the land was re-annexed to the king's domain, and afterwards granted to some person under whom they claim title. 4. If Gaignon (or Rouge) owned the land and cultivated it in Spanish times, and died, and his widow cultivated it until she married Fine, and Fine cultivated it both before and after her death, all prior to the 20th day of December, 1803 — upon these facts, the act of Congress of June 13, 1812, did not so operate as to confirm the title to

the land to Philip Fine. 5. The act of Congress of June 13, 1812, does not give title to land, in any case, upon the bare fact of cultivation or possession thereof prior to the 20th of December, 1803. Besides that, in order to work a confirmation of title by the act, there must be a right, title or claim existing at the time of the cultivation or possession, and continuing down to the date of the act. 6. Unless it be shown to the satisfaction of the jury that the land in question was, before the change of government, a town or village lot, outlot, or common field lot, in, adjoining or belonging to the town of St. Louis; that Philip Fine inhabited, cultivated or possessed the same prior to the 20th December, 1803; and that the said Fine had a right, title or claim to the said lot beyond the mere fact of his cultivation or possession thereof, the plaintiffs can not recover in this action, as claiming through and under the said Philip Fine. 7. If, in Spanish times, Philip Fine, being an inhabitant of the town of St. Louis, possessed and cultivated the land in question, having no right, title or claim thereto, except such as might spring from such possession or cultivation; and if, before the change of government, he ceased to possess or cultivate the said land, and ceased to be an inhabitant of the town of St. Louis; and if he obtained a grant of a tract of land from the Spanish authority, fifteen miles or more from St. Louis, and made a farm upon it, and lived there with his family for more than twenty years, and died there, without ever again taking possession of the land in question, and without instituting any proceeding to establish his right to possess or own the same, he abandoned the land, and the plaintiffs here can make no title to it through or under him. 8. The jury are instructed that if the plat of the Spanish surveys read in evidence differs from the plat of the United States surveys read in evidence, the Spanish plat is entitled to the preference as better evidence than the United States plat. 9. If the jury believe from the evidence that, after Philip Fine is said to have cultivated the land in dispute, the officers of the Spanish government treated the same as a part of the public domain,

and that said Fine never exercised any acts of ownership over said land after he is said to have ceased cultivating the same up to the time of his death, they may well presume that he abandoned said land at the time he is said to have ceased said cultivation, and find for the defendants."

The jury found a verdict for plaintiffs.

*Casselberry* and *E. Bates*, for appellants.

I. The court erred in ordering a special venire to be summoned outside of the city of St. Louis. (Sess. Acts, 1855, p. 527.) The third instruction was erroneously refused. The deeds read in evidence by plaintiffs described the land as a tract which was owned by Philabert Gaignon, alias Laurent Larouge, under the Spanish government. Plaintiffs showed no title under Larouge. The evidence showed that Fine abandoned the land about 1794, if he ever had possession. The court should have granted a new trial. It should have instructed the jury that they ought, under the circumstances, to presume an abandonment. The court should have rejected the sheriff's deed. Plaintiffs did not show any judgment. Besides, the sheriff sold the whole forty arpens in a lot. He ought to have sold the property in parcels corresponding with the blocks and streets in the city. (2 Greenl. Ev. § 316 ; 1 Holt's Cas. 589, *n.* ; 1 H. & Gill, 172 ; Evans v. Wilder, 5 Mo. 319 ; 7 Mo. 362 ; Evans v. Ashley, 8 Mo. 177.) The recitals in the deed of Cuns to Fine were not evidence in favor of those claiming under Fine. Plaintiffs show no documentary title. A distinction should be taken between titles and claims under the act of June 13, 1812. When no written title or a concession is produced, a claim must not only be proved by showing that the lot was actually inhabited, cultivated or possessed prior to December 20, 1803, but that the claimant or his representatives continued to exercise acts of ownership over the land down to the passage of the act of 1812. For definition of claim see Guitard v. Stoddard, 16 How. 512 ; Code Napoleon, Laws 549, 930, 1926, 2102 ; Tom. Law D. tit. Claim ; Plowd.

359; Litt. § 420; Co. Litt. 250–2; 16 Pet. 615; 15 Mo. 302. See generally Vasseur v. Benton, 1 Mo. 212; 3 Mo. 168; 4 Mo. 458; 6 Mo. 333; 20 Mo. 162; 9 Mo. 347, 796; Page v. Scheibel, 11 Mo. 167; Harrison v. Page, 16 Mo. 182; Soulard v. Allen, 18 Mo. 590; Soulard v. Clark, 19 Mo. 570; St. Louis v. Toney, 21 Mo. 242; Carondelet v. McPherson, 20 Mo. 192; Papin v. Hine, 23 Mo. 274; Fine v. Schools, 23 Mo. 570; Vasquez v. Ewing, 24 Mo. 31; Carondelet v. St. Louis, 25 Mo. 448; Funkhouser v. Langkopf, 26 Mo. 453.) The testimony was wholly insufficient to authorize a verdict. The court below erred in refusing the first instruction asked. The court erred in refusing the seventh instruction asked by defendants. Philip Fine was not an inhabitant of a village after 1794. So also the court erred in refusing the ninth instruction. The land was treated by the government as abandoned. The court erred in refusing the instructions on the subject of abandonment which were asked by defendants, and also in giving instructions on that subject given on the court's own motion and at the instance of the plaintiffs. The instructions given entirely cut off all presumption of abandonment, and prevented the jury from taking into consideration any thing in relation to the presumption of abandonment by Fine or those claiming under him, and threw on defendants the necessity of proving abandonment affirmatively. The jury, under these instructions, could not take into consideration the many circumstances by which they could infer or presume abandonment. Abandonment is a question of law based on facts. (6 Mo. 336; 11 How. 96; 12 How. 434, 223; 13 How. 3; 15 How. 29; 12 Peters, 456; Moreau & Carlton's Partidas, 365; Strother v. Lucas, 6 Pet. 772.) This is a much stronger case of abandonment than is Strother v. Lucas. The court erred in admitting in evidence the Soulard plat, also the township plat marked A. The court erred in refusing the eighth instruction asked.

*Todd*, for respondents.

I. The first and second instructions given for plaintiffs are

correct. (1 Mo. 296; 3 Mo. 368; 11 Mo. 167; 16 How. 509; 20 Mo. 162; 17 Mo. 210.) The instructions given on the court's own motion were correct. (11 Mo. 182; 20 Mo. 162.) The court did not err in refusing instructions asked by defendants. The instructions given embraced all the proper and practically useful law of the case. The first instruction refused was erroneous. It was immaterial whether the land belonged to Fine on or before December 20, 1803. His cultivating it did tend to prove ownership. The second instruction refused was a mere abstract proposition. It is against the legal presumption that the fact of possession implies a right. (11 Mo. 182; 16 How. 511.) The fourth instruction is wrong. It conflicts with the construction of the act of 1812 given in Lajoye v. Primm, and Guitard v. Stoddard. The fifth is wrong because the act of 1812 does give title upon the bare fact of possession. (Id.) The sixth is also erroneous for the same reason. The seventh is also wrong. The eighth also. It assumes that the plat of the Spanish surveys correctly represents these surveys. There were two plats, and they differ. These plats are not official acts. The surveys were of the lots as located in 1770 and 1772. The lots may not have been in the same precise location when Fine cultivated. The ninth instruction was properly refused. The jury were fully instructed as to the law of abandonment. The court properly ordered the summoning of a special jury. (11 Mo. 247; 1 Danl. Pr. 597; 2 Tidd's Practice, 788.) Both parties accepted the jury. The township map was properly admitted. It simply showed where the land was located as alleged in the petition. The defendants showed precisely the same thing by their surveys. The sheriff's deed to Fine is not void for the reason alleged. The deed is not void for the cause assigned. The deed to Fine of the town lot in St. Louis in March, 1792, was introduced to rebut evidence introduced on the part of defendants to show that Fine had previously left St. Louis It showed that in 1792 Fine had a dwelling in St. Louis. The objection to the deed is general.

EWING, Judge, delivered the opinion of the court.

The special act of 1855 relating to jurors in St. Louis county was properly disregarded by the court in directing a special venire for a jury to be summoned outside of the city limits. The inhabitants of the city were not competent jurors. This point was not decided in the case of Eberle v. The Schools, 11 Mo. 261, (two of the judges making no allusion to it in their opinions;) but we concur in the conclusion of the judge (Scott) who gave an opinion on that point.

On the trial the plaintiff read in evidence, among other conveyances, a deed from the sheriff of St. Louis county to Joshua Fine for the tract of which the land in controversy is a part. The defendant objected to the evidence on the ground that the deed was void, the whole tract having been sold in one mass without being divided. The statute relating to the levy and sale of property under execution is directory, and a violation of its injunctions will not make void a sale for such cause, although it may be good ground for setting it aside, on proper application. (Rector v. Hart, 8 Mo. 460.)

The plaintiff read in evidence a conveyance from one Cuns to Fine, dated 1792, for a lot in St. Louis, which recited that Fine was then an inhabitant of St. Louis. This paper was read in rebuttal after the defendants had introduced evidence with regard to Fine's removal to and residence on the Maramec, and of his acquisition of land at that place prior to its date. One of the defendant's counsel erroneously assumes in his argument that the paper in question was a conveyance from Fine to Cuns, and bases his objections mainly upon this assumption. Fine, however, was the grantee, and the recital as to his place of residence at the time of the execution of the deed is the mere declaration of a third person, which was inadmissible. There is no rule of evidence that would make the recitals of Fine's grantor evidence in his own favor, or for those claiming under him.

12—VOL. XXX.

The rule respecting the nature and effect of recitals in deeds is reversed in this case, and the attempt here is not to set up the recital as an estoppel by one claiming adversely to the deed, but the party claiming under it seeks to use the recital in his own behalf. Although the recital, as it respects Fine's residence in St. Louis, was inadmissible, we see no reason why the fact that he bought a lot there should not go to the jury for what it is worth. Whether it is a circumstance of much or little importance as bearing upon the question of abandonment will be for the jury to determine, and for that purpose the deed might have been offered.

The instructions given by the court on its motion are erroneous. They are as follows: "If the jury believe from the evidence that Philip Fine cultivated this lot as stated in the first instruction given for the plaintiff, and that he in his own mind continued to claim it until the 13th June, 1812, then the jury should not find that he had abandoned his claim to it, and until the contrary be proved the jury should presume that he continued to claim. And although the jury may believe that Philip Fine quit cultivating said lot when the fence fell down, and went away to live on land on the Maramec river conceded to him, and made a farm thereon, and failed to prove up his claim to said lot under the act of 1824, these circumstances do not constitute abandonment of his claim to said lot."

In support of these instructions we are cited to the cases of Page v. Scheibel, 11 Mo. 183, and Barada v. Blumenthal, 20 Mo. 162. In the first of these cases, the court was asked to declare, as a matter of law, that the facts of removal from St. Louis to another place in the same county, which was made a permanent domicil prior to 1796 ; that the claimant ceased to cultivate the land, and that neither he nor his representatives set up claim to the same before any of the authorities of the United States under any act of Congress, nor exercised any act of ownership over the same, constituted an abandonment. This was held erroneous, and that the facts of removal and ceasing to cultivate were not neces-

sarily inconsistent with a continued claim; that there must be a quitting of the possession of the property with the intention that it should no longer be the property of the possessor. In the second case cited, the instruction asked and refused entirely threw out of consideration the question raised on the defence respecting abandonment, which was held to have been rightly refused, because there was evidence of abandonment which the jury should have been at liberty to consider. In the case before us the state of facts is different from that in the cases cited, and they do not sustain the ruling of the court in giving the instructions.

The Spanish law on the subject of abandonment declares that if a man be dissatisfied with his immovable estate and abandon it, immediately he departs from it corporeally with an intention that it shall no longer be his it will become the property of him who first enters thereon. (1 Partidas, Law 50, p. 365.) Abandonment is a question for the consideration of the jury and depends upon the intention, which is to be ascertained from circumstances. (Landes et al. v. Perkins, 12 Mo. 257. See also 20 Mo. 162.) What the claimant may have determined in his own mind, it is true, could only be known by his acts and conduct; but this phraseology of the instruction was calculated to give undue importance in the minds of the jury to certain evidence of Fine's declarations and to divert attention from other facts in the case entitled to consideration.

In the case of Page v. Scheibel, *supra*, it was obviously improper to give the instruction asked respecting abandonment under the state of facts proved, because there was evidence of a continued claim to the land, notwithstanding the claimant's removal from it and the acquisition of a domicil elsewhere. But it does not follow that it was proper to charge the jury, in this case, that similar acts or circumstances *did not* constitute abandonment; for if there was any evidence besides tending to prove abandonment, it was erroneous to select these facts from the mass and present them to the jury as being decisive of the case; for so the jury

would be inclined to regard them under such an instruction. While the charge directed the attention of the jury especially to the facts presented, it was calculated to impair the force of other evidence in the cause. In other words, it was in the nature of a commentary upon the evidence, and was calculated to mislead the jury.

If the fifth and sixth instructions are to be understood as declaring that a claim, right or title under the act of 1812 must be established other than by evidence of inhabitation, cultivation or possession, they are erroneous and contrary to what has been the settled construction of that act by this court, and the supreme court of the United States. (Vasseur v. Benton, 1 Mo. ——; Lajoye v. Primm, 3 Mo. 368; Page v. Scheibel, 11 Mo. 167; Guitard v. Stoddard, 16 How. 510.)

The title of the claimant under this act does not depend upon proving the existence of a formal permission from the authorities of the former government to take possession of village lots, a survey thereof, or any documentary evidence of title thereto; and the act requires no such proof, but confirms the title upon possession, inhabitation or cultivation, without regard to the legality of the origin of such title. In Guitard v. Stoddard, *supra*, the court adopted the conclusions presented in the cases above cited, and observe that the act of 1812 makes no requisition for a concession, survey, permission to settle, cultivate or possess, or of any location by a public authority as the basis of the right, title and claim upon which its confirmatory provisions operate; that although there may have been originally no legitimate right or claim without some such authority, Congress, in the act of 1812, was not dealing with written or formal evidences of right.

The seventh instruction implies a distinction between a right, title or claim arising from possession or cultivation merely, and a claim or title of a supposed higher nature contemplated by the act of 1812; and also implies that less evidence would be sufficient to make out an abandonment in the former case than the latter. In this respect the instruc-

tion is equally objectionable with the fifth and sixth, which we have seen give an improper construction to the act of 1812.   If inhabitation, cultivation or possession alone was the basis of the confirmation under the act, such cultivation or possession implying a rightful claim, there was no ground for telling the jury that the absence of evidence of a higher right or claim than these facts conferred, was a circumstance for their consideration in determining the question of abandonment.

The remaining instructions need not be noticed in detail; we think they were properly refused.   As to the plats read in evidence, we are of opinion they were admissible for the purpose for which they were offered; and the court very properly refused to charge the jury as prayed in the eighth instruction as to their relative weight as evidence.

Judgment reversed and the cause remanded.   Judge Scott concurring.