LOUISE TAYON *et al.*, Respondents, *v.* AUGUSTUS P. LADEW, Appellant.

33  205
97  489

33  205
105  152

*Common Field Lots.*—It was unnecessary to the confirmation of a common field lot by virtue of the first section of the act of Congress of June 13, 1812, that the common field should have immediately adjoined the village or its commons.

*Abandonment* —To constitute an abandonment under the old Spanish law in Missouri, it must appear affirmatively that the owner quitted the property with the intention of no further claiming it as his own.

*Limitations.*—When the plaintiff shows title to a tract of land which conflicts with the title to a part of the tract claimed by the defendant, to defeat the plaintiff's title by the statute of limitations, it must appear, not only that the defendant had possessed part of the tract described by his deed, but that he actually occupied part of the tract claimed by the plaintiff.

*Practice, amendment.*—The amendment of the petition at the trial, by striking out the name of one plaintiff and substituting another, is within the discretion of the court.

*Depositions in Perpetuam.*—Parties who appear and cross-examine the witnesses under a commission to perpetuate testimony, will be held to have had actual notice.

*Appeal from St. Louis Land Court.*

*Wood & Todd,* for respondents.

I. There was no error in admitting the deposition of Antoine Smith.   (R. C. 1845, p. 793 ; Sess. Acts, 1851, p. 250; Tayon et al. v. Hardman et al., 23 Mo. 539.)

II. There was no error in the court allowing the amendments made as to names of plaintiffs.   (2 R. C. 1855, § 1, p. 1253. )

III. Relative to the action of the court upon instructions, the plaintiffs submit the following :

The main issues made by the pleadings and evidence were,

1. Was the land sued for part of a common field lot of the Spanish town of St. Louis ?

2. Did Bequette " possess " or " cultivate " it prior to December 20, 1803, and while an inhabitant of said town ?

3. Had he abandoned it ?

4. Did the statute of limitations bar a recovery by plaintiffs ?

14—VOL. XXXIII.

The court instructed upon each of these issues, and fully, and in terms already settled by this court. (Tayon v. Hardaman, 23 Mo. 539; Guitard v. Stoddard, 16 How. U. S. 494; Page v. Scheibel, 11 Mo. 183; Milburn v. Hortiz, 23 Mo. 533, 537; Glasgow et al. v. Hortiz et al., 1 Black, U. S. 595–596.)

For the first issue see instruction No. 1 for plaintiffs. (Tayon v. Hardaman, 23 Mo. 539,540 & 541; Milburn v. Hortiz; Glasgow et al. v. Hortiz, 1 Black, U. S. 595–596.)

For the second issue see instruction No. 2 for plaintiffs. (Guitard v. Stoddard, 16 How. 494.)

For the third issue see instruction No. 5 for plaintiffs, and No. 3 for defendant. (Page v. Scheibel, 11 Mo. 183; Fine v. Public Schools, 30 Mo. 166.)

For the fourth issue see instruction No. 4 for plaintiffs, and No. 7 for defendant. (Griffith v. Schwendermann, 27 Mo. 412; 2 Sergt. & Rawle, 439; 12 N. H. 9; Angell on Lim. 432.)

Instructions Nos. 1 and 2 asked by the defendant and refused are embraced in Nos. 1 and 2 given. (1 Black, U. S. p. 595, 596 & 599.)

Instruction No. 4, refused of defendants, was not needed, the settled rule relative to abandonment being stated. (Chouquette v. Barada, 28 Mo. 498–99.)

No. 6, refused of defendants, was unnecessary as a definition of a field lot, because already given, and it is faulty as a definition because it makes it necessary that a field lot, to come within the meaning of the act of 1812, must be physically *connected* with the town.

And when the instructions as a whole contain a correct exposition of the law and fairly present the case, the judgment will not be reversed because exceptionable when taken separately, or because others were refused which were proper in themselves, or because of the refusal of an instruction which is the converse of the one given. (Williams v. Vanmeter, 8 Mo. 339; Hart v. Robinson, 13 Mo. 82; Huntsman v. Rutherford, 13 Mo. 465; Gamache v. Piquignot, 17 Mo. 310; Young v. White, 18 Mo. 93; Carroll v. Paul, 19 Mo.

102 ; Pond v. Wyman, 15 Mo. 175 ; Carrol v. Paul, 16 Mo. 226 ; 28 Mo. 498-9.)

*Cates & Page*, for appellant.

BATES, Judge, delivered the opinion of the court.

This is a suit for the possession of a piece of land near the city of St. Louis.

The plaintiffs claim to be the representatives of one Bequette, and that the land is part of a lot which was confirmed to Bequette by the act of Congress of the 13th of June, 1812, as a lot in the common field of the Grand Prairie of St Louis.

The defendant claims title under a New Madrid location, and patent to one Gencreux, under whom he claims, and also under the statute of limitations by length of possession.

The land in dispute is the western end of the common field lot which laps over, and to the extent of a few arpens conflicts with the location of the New Madrid claim, which was a large tract. It is not disputed but that a confirmation by the act of 1812 is a better title than a New Madrid location.

At the trial the plaintiffs gave evidence tending to show that prior to the 20th of December, 1803, Bequette, then an inhabitant of the village of St. Louis, cultivated the lot of which this land is a part, and that it was one of a series of lots which composed a common field. No official survey of the lot is in evidence.

Evidence was also given that Bequette's lot was in a different place.

The common field of the Grand Prairie does not immediately adjoin any of the lots of the village of St. Louis, nor the common, nor any other common field of the village, it being separated from the common field nearest the village by an irregular strip of vacant land. The lots in it were cultivated by the villagers. The defendant makes three objections to the title of the plaintiffs.

1. That the common field did not adjoin. the village of St. Louis or its commons.

We think this unnecessary. The field was in the vicinity of the village, was cultivated by the villagers, and was regarded as belonging to them; and the land department of the government and the courts, State and National, have always considered lots in it as confirmed by the act of 1812.

2. That Bequette's lot was in the Cul de Sac, at a different place, and therefore did not include the land in question.

Certainly, to entitle the plaintiffs to recover it was necessary for them to show that the land in question was a part of the identical lot cultivated by Bequette, and we presume they did so to the satisfaction of the jury. If any direction to that effect had been asked of the court, no doubt it would have been given. The fifth instruction asked by the defendant, which contained that direction, with an improper addition to it, does not appear by the record to have been either given or refused, and we therefore disregard it.

3. That Bequette had abandoned his claim to the land.

Upon this subject the court gave two instructions:

First, (defendant's third,) "That although the jury may believe from the evidence that the land in contest was part of a common field or out lot, and the same was inhabited, cultivated or possessed by said Francis Bequette prior to the 20th of December, 1803, yet if from the evidence they believe that said Bequette, his heirs or legal representatives, did leave the said common field or out lot with the intention not to return and occupy the same as his or their property respectively, such action on his or their part is an abandonment of their or his right, title or claim to the land in contest, and the jury should find accordingly."

Second, (plaintiffs' fifth.) "The question of abandonment is one of fact and intention. Ceasing to cultivate a lot in the common fields and a removal elsewhere do not make an abandonment; but, to constitute an abandonment by a party, it must be shown that he quitted the property with the intention of no further claiming the same, and the burden of showing the abandonment rests upon the one who asserts it."

These instructions properly stated the question to the jury

in accordance with previous decisions by this court. (Payne v. Hardiman, 23 Mo. 539; Fine v. St. Louis Public Schools, 30 Mo. 166.)

As to the title of the defendant under the statute of limitations: He claimed by deed from the heirs of Nathaniel P. Taylor, and evidence was given tending to prove that more than twenty years before the beginning of the suit, Taylor, claiming the Genereux location, entered upon it and took possession of a part of it, (claiming the whole,) but not upon the part now in dispute, and also evidence tending to prove his possession of the whole tract.

The court gave to the jury two instructions, as follows:

First, (Plaintiffs' No. 4.) "To defeat the plaintiffs' title by the statute of limitations, it is not sufficient for the defendant to show that Nathaniel P. Taylor had possession of part of the land included within the New Madrid location given in evidence for more than twenty years next before the commencement of this suit, but the defendants must go further, and show that said Taylor had actual and exclusive possession of some portion of the forty arpens claimed by the plaintiffs under Bequette for twenty years or more before this suit was brought."

Second, (defendant's 7th.) "And if the jury believe from the evidence that defendant, and those under whom he claims, entered on the land in contest as part of a large tract patented to Joseph Genereux, and took actual possession of the same, claiming the same by marked and well defined boundary, enclosing, cultivating and improving the same in good faith as their property, which entry, enclosure, cultivation and possession was open, notorious, adverse and continuous for twenty consecutive years prior to the commencement of this suit, the law is for the defendant, and the jury should find accordingly."

These instructions correctly state the law applicable to the case. (McDonald v. Schneider, 27 Mo. 412; Schultz v. Lindell, 30 Mo. 317.)

At the trial the plaintiffs amended their petition by leave

of the court, by correcting the name of one of the plaintiffs, and also by striking out the name of one of the plaintiffs, and substituting for it the name of that plaintiff's mother. It was shown to the court that when the suit was brought, it was not known that the mother was living, and the daughter was made a plaintiff as her heir. In such case we will not interfere with the discretion exercised by the court below in permitting the amendment.

The plaintiffs read to the jury the perpetuated testimony of Antoine Smith. The defendant objected to the reading the deposition upon the grounds, first, that "there was no power or jurisdiction in the person who purports to have taken said evidence;" and second, "there was no legal notice of the time and place of taking the same."

As to the first objection, it was taken by the clerk of the St. Louis Circuit Court, upon a commission issued to him by the order of that court.

The law (Acts of 1845, p. 793, § 3) provides that the commission may be issued to the clerk of any Circuit Court in the county where such testimony is to be taken.

As to the second objection: The defendant claimed under Clay Taylor, Edmonia Taylor and Eliza Wash. The notice was served upon the guardian of Edmonia Taylor, who was then a minor, and upon Eliza Wash and her husband, who was then living, and they and also Clay Taylor appeared, by their counsel, at the taking of the deposition, and cross-examined the witness. They thus showed that they had actual notice, and received and used all the advantage of it. The court properly overruled the objections.

The defendant offered in evidence several documents, which appear to have no connection with the matters in dispute. The plaintiffs objected to them for irrelevancy, and they were excluded. We cannot see that the court committed any error in excluding them, and we think it unnecessary to describe them here.

The other judges concurring, the judgment of the court below is affirmed.