LEEPER, *Appellant*, v. BAKER.

1. **Constructive Adverse Possession,** WHEN NOT ESTABLISHED. Where plaintiff's documentary title to a forty acre tract of land was better than that of the defendant, who, however, claimed such tract under a deed conveying the same and an additional tract of 651 acres, of which latter tract 600 acres had been inclosed by defendant and those under whom he claimed, for more than ten years prior to the commencement of the action; *Held*, that the actual occupation of the 651 acre tract did not, of itself, draw to it such a constructive adverse possession of the forty acre tract as would, under the statute of limitation, defeat plaintiff's better title to the same.

2. **Adverse Possession.** Where, however, evidence was given that such forty acre tract was literally swamp land and unfit for cultivation, with the exception of a few acres for the clearing and cultivating of which plaintiff would not have been compensated, and was only valuable for the timber upon it, and was incapable of being fenced without risk of having the fence washed away by high water; that defendant and those under whom he claimed, had paid taxes on it for more than ten years, and had used it, as incident to the 651 acre tract, to supply himself with rails and house-logs, and to water his stock at a pond thereon; that he had included it in a survey of the 691 acres made by him on the premises, and had duly recorded his deed for the entire tract; that plaintiff lived only eight miles from the land, and had notified defendant about the beginning of his occupancy that he owned the forty acre tract; and, from the evidence, it was fair to presume that plaintiff was aware of defendant's claim to the same; *Held*, that a finding, under proper instructions as to adverse possession, in favor of the defendant, was not without evidence in its support, and that the judgment thereon should be affirmed.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

*Shanklin, Low & McDougal* for appellant.

1. To constitute adverse possession, two facts must concur: 1st, There must be an entry, under color of right, claiming title hostile to the true owner and the world. 2nd, That entry must be followed by possession, and appropriation of the premises to use, publicly and notoriously, so that other claimants may take notice, and others may

be cognizant of the fact. *Dixon v. Cook*, 47 Miss. 220, 226; *Turner v. Hall*, 60 Mo. 271.

2. Defendant's possession of the farm under a deed conveying the whole tract of 691 acres, gave him at most only constructive possession of the tract in controversy, as against persons not having title. The constructive possession of the true owner is preferred to the constructive possession of one who has no title. *Griffith v. Schwenderman*, 27 Mo. 412.

3. The acts of ownership exercised over the land by defendant did not constitute actual, open, notorious and continuous possession. In the language of Bliss, J., in *Musick v. Barney*, 49 Mo. 464, "Suppose the owner had visited the land * * would he have seen such evidence of possession by another as to warn him that his title was slipping away from him? And if so, was there anything to notify him as to who was the claimant? He might have seen that timber was cut, but this of itself shows only a trespass, unfortunately too common to be regarded as evidences of a claim of ownership. The payment of taxes is an act of ownership, the strongest shown by the defendant, and had it been accompanied by any improvement of the property, would have greatly aided the claim."

4. Mere acts of ownership, as distinguished from actual occupation, are not sufficient to impart notice to the true owner of an adverse claim. "The late decisions of this court certainly manifest no disposition to multiply those evidences of adverse possession, which tend to give it a constructive character." *Turner v. Hall*, 60 Mo. 271. Adverse possession is not to be made out by inference, but by clear and positive proof, and the possession must be such as to show clearly that the party claims the land as his own, openly and exclusively. *Jackson v. Berner*, 48 Ill. 203, 208.

*Pollard & Chapman* for respondent.

1. *Pedis possessio* is not necessary in order to defeat an action of ejectment; neither is a fence, building or other improvement necessary or essential to constitute adverse possession. Acts of ownership under color of title and claim of right, visible, are sufficient; and the nature of these acts of ownership must depend on the uses of which the land is capable. *Turner v. Hall*, 60 Mo. 271 ; *Draper v. Shoot*, 25 Mo. 197.

2. An entry upon the cultivated portion of a farm, under a deed to the farm, the payment of taxes upon the whole, and such acts of ownership over the uninclosed portion for more than ten years as a man ordinarily exercises over the same, will give a constructive *seizin* of the whole tract to which the title extends, unless the person having the better title was within ten years in the actual possession of such part not actually occupied by the *disseizor*. *Fugate v. Pierce*, 49 Mo. 441.

NAPTON, J.—This ejectment was brought in December, 1875. It was conceded that the plaintiff had the better title, and the only defense relied on was the statute of limitations. The forty acres in dispute belonged, in 1856, to Livingston county, as swamp land, and was agreed to be conveyed to one Craig upon his payment of eighty per cent. of the purchase money, twenty per cent. of it having been paid at the date of the agreement. This title of Craig was assigned to the plaintiff in 1860, and in 1866 the plaintiff received a deed from the county. In 1860, but subsequent to Craig's assignment to plaintiff, Craig conveyed his farm containing 651 acres, 600 acres of which were under fence, together with this forty acre tract now in dispute, to a trustee to secure certain debts named in the deed. Upon the foreclosure of this trust by a sale in 1863 or 1864, the defendant's father-in-law purchased the entire tract of 691 acres, and obtained a deed from the sheriff,

and the defendant entered and took possession of the place in the spring of 1865, and made use of this forty acre tract to supply himself with rails and house-logs, and watered his stock at a pond which was on it, and paid the taxes on it from 1864 to the trial. It appeared from the testimony at the trial that the land was unfit for cultivation, and that it could not be fenced up without the risk of its being washed off by high water. The plaintiff himself, who lived about eight miles off, testified on the trial: " I notified defendant about the time he took possession of the farm, that I owned the forty in dispute."

The first question presented by the testimony is, whether the actual occupation, under inclosure, of the 600 acres of land by the defendant, will of itself draw to it a constructive possession of the forty acres embraced in the same deed; and if not, whether it will, in connection with the exercise of the usual acts of ownership over the forty, to which there was a better outstanding title, constitute such an adverse possession as will protect him under the statute of limitations. The first point has been considered and decided by this court in several cases. They are chiefly cases in which New Madrid locations, under the act of 1815, were laid on portions of the St. Louis or St. Charles commons, thereby covering one or more common field lots to which the title originated under the act of 1812. The cases of *McDonald v. Schneider* and *Griffith v. Schwenderman*, 27 Mo. 405, 412, are cases of this character. In the former it is observed by Judge Scott, who delivered the opinion of the court: " Although it is a rule that he who is in possession of a part of a tract of land, having title thereto, is adjudged by the law to be in the possession of the whole of it; and although it is a rule that where possession is mixed, or where two persons possess adjoining tracts, and their possession conflicts or interferes the one with the other, the legal possession is adjudged to be in him who has the better title; for, as both cannot be seized, the pos-

1. CONSTRUCTIVE ADVERSE POSSESSION, when not established.

session follows the title; yet, if he who has the inferior title enters upon the interference, and actually occupies it adversely to him who has the better title for a sufficient length of time, he will acquire a title against the true owner by limitation, as to the portion actually occupied, although the true owner may be in actual possession of that portion of his tract which is not covered by the interference." This proposition, however, so far as it applies to the case we are considering, is stated more clearly by Judge Ewing in the subsequent case of *Schultz v. Lindell*, 30 Mo. 319, in these words: " Where a large tract embraces several smaller ones, a *pedis possessio* of a few acres (or many acres) by one setting up title to the larger tract, claiming the whole, would not be a defense against a superior title in any one of the smaller tracts. There is, in such case, no ouster of the owner of the smaller tract, because the possession being of a part of the larger tract not included in his, is not adverse to him; and the constructive possession following his title will prevail against any other but an actual possession. Where, however, the rightful owner of one of the smaller tracts is not in possession, and the claimant of the larger one enters upon and incloses a part of the former, and continues in possession for twenty years, claiming the whole, he would not be confined to the part actually occupied, but his possession would be construed to be co-extensive with the boundaries of the deed." There is no inconsistency in these opinions. In the first case there were conflicting possessions, and in the last no possession by the owner of the smaller tract. These cases were followed by the case of *Tayon v. Ladew*, 33 Mo. 209, in which the following instructions were approved: " To defeat the plaintiff's title by the statute of limitations, it is not sufficient for the defendant to show that N. P. Taylor had possession of part of the land in cluded within the New Madrid location given in evidence for more than twenty years next before the commencement of this suit, but the defendant must go farther, and show

that said Taylor had actual and exclusive possession of some portion of the forty arpens claimed by the plaintiffs under Bequette for twenty years or more before this suit was commenced." " And if the jury believe from the evidence that defendant, and those under whom he claims, entered on the land in contest, and took actual possession of the same, claiming the same. in good faith, as their property, by well defined and marked boundaries, inclosing, cultivating and improving the same, &c., which entry, inclosure, &c., was open, notorious, adverse and continuous, &c., they must find for defendant." It is obvious from these decisions that defendant's·actual occupancy of the farm of 651 acres, under a deed conveying 691 acres, did not necessarily defeat the plaintiff's title to the forty acres, although the forty acres was included in the deed, if there was no adverse possession of any part of the forty acres.

So that the principal and decisive question is, in this case, was there such adverse possession of the forty acres 2. ADVERSE POSSES- in dispute, continued for ten years, as will SION. defeat the plaintiff's rights under his superior title. As has been said in numerous cases, both in this State and elsewhere, adverse possession under the statute of limitations is a subject not susceptible of very definite explanation. It depends somewhat ·on the circumstances of each case, but the general rules which may be extracted from the multitude of cases on the subject, seem to be sufficiently definite for the guidance. of courts in their application to the variant features developed in each particular case as it arises. The words " actual occupancy " are themselves indefinite in their meaning, for although they are usually applied to a case of residence on the land, or to an occupation by·fences or buildings, they are not necessarily restricted to such marks of occupation, but may be applied to other acts of ownership which are known to the true owner. In the present case the forty acres in controversy was literally swamp land, and only valuable for the timber on it. There were some acres of it which could have been

cultivated, but an owner of 600 acres of land in cultivation and pasture, would hardly have gone to the expense of clearing such few acres and cultivating it, and a fence inclosing the whole of the forty acres would have been liable to be washed away. The defendant, who claimed under a deed including it, simply used it to get logs and rails from it. In the survey of the entire tract of 691 acres, which he had made, the forty acre tract was included. He paid taxes on it from 1864. The plaintiff, it appears, advised him in the spring of 1869 that he owned it. Why this advice was given does not appear, but as the plaintiff lived in the neighborhood, it is fair to presume that he was aware of the claim of defendant to the 691 acres which was conveyed by deed duly recorded. Upon this testimony the court, at the instance of plaintiff, gave the following instructions:

5. While it is true that in some cases actual occupation is not indispensable, still its absence must be supplied by some act or acts of ownership done on or about the land that will give notice of an adverse claim to the owner by visitation and inspection of the land, and if the court finds that defendant, Baker, for years at a time exercised no visible acts of ownership on the land, so that upon inspection no vestige of an adverse occupation remained upon the land, then the cutting of house-logs and the making of rails at three different times in a period of ten years, cannot and do not constitute such an adverse occupancy of the tract in controversy as will defeat the legal title of plaintiff read in evidence.

6. To constitute an adverse occupancy of the tract in controversy, the court must find that the possession of defendant, and those under whom he claims, was, for ten years next before the commencement of this suit, notorious, that is, generally known by those residing in the neighborhood, and that it was an open, visible and exclusive possession, accompanied by such acts of ownership as would enable any one upon a visit to and inspection of the

land to see that some person or persons held it in actual possession.   And also the following for defendant :

8.   A fence, building or other improvement is not essential to constitute an adverse possession.   Acts of ownership, under a claim of right, visible, are sufficient to authorize the court to find such possession; and the nature of these acts of ownership must depend on the uses of which the land was capable.   These instructions are clearly in conformity to repeated decisions of this court.   *Draper v. Shoot*, 25 Mo. 203; *Fugate v. Pierce*, 49 Mo. 441 ; *Musick v. Barney* 49 Mo. 458 ; *Turner v. Hall*, 60 Mo. 271; *Key v. Jennings*, 66 Mo. 356, and the verdict on them must have been based on the conclusion from the evidence that the acts of ownership exercised in this case were " visible," and such as upon inspection would advertise the owner of an adverse claim.   In *Draper v. Shoot*, it was held that to constitute an adverse possession there need not be a fence, building or other improvement made, and that it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute; that much depends upon the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule in all cases, but that it may safely be said that where acts of ownership have been done on land, which from their nature indicate a notorious claim of property in it, such acts are evidence of an ouster of a former owner, and an actual adverse possession, provided the property was not susceptible of a more strict or definite possession.   Under this view of the law, which was clearly explained by the instructions on both sides given by the court, it cannot be maintained that the verdict was without evidence.   Had the court qualified the instruction given for defendant by requiring the acts of ownership to have been exercised with the knowledge of the adverse claimant, the propriety of the verdict would have been more obvious, as there

was undoubtedly evidence tending in that direction. It seems that an interview with defendant was sought by plaintiff at the very beginning of his occupancy of the farm, and that he advised the defendant, at that interview, of his claim to the forty acre tract. It is not unreasonable to suppose that the defendant was not silent as to his claim under the Craig deed. The plaintiff, in truth, had no legal title at that time, and it was not till 1866 or 1867, that the county conveyed to him, and the only probable cause of his delay in bringing suit was the mistaken assumption that the statute could not run against the county. Judgment affirmed.

AFFIRMED.