Hickman v. Link et al., Appellants.

1. **Land and Land Titles** : COLOR OF TITLE. Any writing which purports to convey the title to land by appropriate words of transfer, and which describes the land, is color of title, though the writing is invalid, actually void and conveys no title.

2. ——— : ——— : EJECTMENT : NONSUIT : ACTS OF OWNERSHIP : EVIDENCE. A judgment of nonsuit in an action of ejectment, where the defense is the statute of limitations, constitutes no color of title in the defendant to the suit, but the record in the case is good evidence that the defendant therein claimed ownership in the whole tract in controversy.

3. ——— : SALE : ABANDONMENT BY PURCHASER : RE-ENTRY BY VENDOR. Where a vendor sells a part of a tract of land, being in possession of the whole, and the vendee fails to pay the whole or a part of the purchase price and abandons his possession taken under the purchase, and the vendor takes control of the whole, his claim will be defined by his former ownership and his title limited thereby.

4. ——— : ——— : ——— : ———. Where the husband so sells and re-enters after abandonment by the purchaser, his widow claiming under him, will have color of title to the whole tract.

5. ——— : ——— : ——— : ——— : ACTS OF OWNERSHIP. Where the part so sold and abandoned was unimproved and largely in a state of nature, and the widow resided on the part not sold, having no actual possession of the part abandoned and reclaimed, but defended her possession of the whole tract in an action by persons claiming an alleged superior title thereto, such defense constituted an act of ownership, and was sufficient under R. S., sec. 3223, to take the case to the jury, upon the question of the possession of the whole tract.

6. Limitations : POSSESSION OF WIDOW NOT ADVERSE TO HEIRS. Where, under the law, the widow is entitled to her quarantine in the whole plantation until dower is assigned her, her possession will not be adverse to the heirs and their possession may be tacked to hers to make up the statutory period of limitation.

7. Ejectment : EVIDENCE. In an action of ejectment against those claiming under a vendor, who reclaimed the land in controversy because of its abandonment by the vendee, it is competent to show that suits were prosecuted against both the vendor and vendee by third persons, as showing a cause for the abandonment of the land by the vendee.

8. Husband and Wife : PURCHASE BY HUSBAND OF ADVERSE CLAIM TO LANDS OF WIFE. The purchase by a husband of an adverse claim to the lands of his wife inures to the benefit of his wife and to himself only to the extent of his marital rights. He and his grantees, as against her, can have no other interest in the property than he had before the purchase.

9. ——— : ——— : EJECTMENT : PRACTICE. In an action of ejectment by one claiming under the husband's purchase of a title adverse to his wife, the defense that such purchase inured to her benefit may be shown under a general denial.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*A. McElhinney* for appellants.

( 1 ) The proceeding in the case of Walker *v.* Bacon, read in evidence, gave color of title to the claim of Ann McCourtney, and the judgment gave her title to the entire tract described in the petition therein as against Goodwin and those holding under him.    *Martin v. Bonsack*, 61 Mo. 556 ; *Crispen v. Hannovan*, 50 Mo. 536 ; *Bradstreet v. Huntingdon*, 5 Pet. 440 ; *Blight's Lessee v. Rochester*, 7 Wheat. 535 ; *Society v. Town*, 4 Pet. 480 ; *Hine v. Robinson*, 57 Maine, 324 ; *Stearns v. Hendersass*, 9 Cush. 497 ; Wash. on Real Property, (4 Ed.) top p. 137, pp. 124 and 137 ; *Bell v. Longworth*, 6 Ind. 272 ; *Fugate v. Pierce*, 73 Mo. 538.    ( 2 ) The attempted purchase by Link and Howell of Goodwin's claim, or outstanding title to the premises, was contrary to public policy, a gross abuse of the marital relation existing between them and their wives, and is absolutely void as to the claim of Mary I. Link as heir of Ann McCourtney.    *Young v. Adams*, 14 B. Mon. 127 ; *Stump v. Finklay*, 2 Rawle, 174 ; *Swisshelm's Appeal*, 56 Pa. St. 474 ; 2 Johns. Ch. 252 ; *Varney v. Stevens*, 22 Maine, 331 ; *Van Epps v. Van Epps*, 9 Paige, 237 ; *Dickens v. Codwise*, 1 Sand. Ch. 214 ; *Michael v. Girod*, 4 How. ( U. S.) 502 ; *Grumley v. Webb*, 44 Mo. 444 ; *Thornton v. Irwin*, 43 Mo. 155 ; Hill on Trustees, ( 4 Am. Ed.) top p. 258.

*Crews & Booth* for respondent.

( 1 ) Ann McCourtney never had color of title to the land in controversy.    To give color of title there must be something in the nature of an acquisition of title from a preceding real or supposed owner.    And whatever this may be it must be of such a character as to afford a basis for a *bona-fide* claim of ownership of

such title. *City v. Gorman*, 29 Mo. 593 ; *Fugate v. Pierce*, 49 Mo. 441 ; *Crispen v. Hannovan*, 50 Mo. 536 ; *Rannels v. Rannels*, 52 Mo. 108 ; *Mylar v. Hughes*, 60. Mo. 105 ; *Hamilton v. Boggess*, 63 Mo. 233 ; *Hughes v. Israel*, 73 Mo. 538 ; *Gaines v. Saunders*, 87 Mo. 557 ; *Wright v. Mattison*, 18 How. 50. ( 2 ) It is immaterial whether said Ann had or had not color of title to the east half of said 480 arpents. But as to said east half her husband died seized of it. It constituted his mansion house and messuage belonging thereto. Possession thereof passed to her as his widow, and the continuance of such possession could give her no title. *Salmons v. Davis*, 29 Mo. 176 ; *Brown v. Moore*, 74 Mo. 633 ; *Keith v. Keith*, 80 Mo. 125 ; *Roberts v. Nelson*, 87 Mo. 229. ( 3 ) Whether plaintiff or defendant prevail, no title is transferred by an action of ejectment. *Kimmel v. Benna*, 70 Mo. 52 ; *Ekey v. Inge*, 87 Mo. 493. ( 4 ) Ann McCourtney never had actual possession of the west half of the 480 arpents. If she had color of title to the 480 arpents, still, as her actual possession was confined to the east half, such actual possession was not adverse to Goodwin's title to the west half. *Leeper v. Baker*, 68 Mo. 400 ; *Tayon v. Ladew*, 33 Mo. 205 ; *Schultz v. Lindell*, 30 Mo. 310. ( 5 ) The claim that the interest Link acquired by the deed from Goodwin enured to his wife is without merit. Mrs. Link paid no part of the purchase money. At the time of the purchase she had neither possession nor shadow of legal or equitable title. There was neither evidence nor pretense that plaintiff took the title of Link with notice of any equitable right. ( 6 ) If Mrs. Link had any equitable right, it was not available as a defense, because not pleaded. *Russell v. Whitely*, 59 Mo. 196.

BLACK, J.—This is an action of ejectment for certain parcels of land which constitute a part of 245 acres of a larger tract of 480 arpents. Mary I. Link is the real defendant.

John McCourtney owned the 480 arpents, and in 1822, conveyed the same to his son, Martin McCourtney, who conveyed the 245 acres to Henry H. Goodwin by deed dated January 21, 1841. Martin McCourtney died in 1852, leaving a widow, Ann McCourtney, and four children. The evidence tends to show that the two boys died without descendants. The daughters, Mary I. and Sarah, were married, the former to Geo. W. Link and the latter to Howell. The widow had actual possession of the part of the land not sold to Goodwin, from the death of her husband to 1866, at which date she died.

Thereafter, and in 1867, Geo. W. Link and Howell procured a quit-claim deed from Goodwin to the 245 acres; and in 1872 they made a division of the land between themselves. The land in suit is a part of that quit-claimed by Howell to Link. In 1876, Link made a deed of trust on his part to secure debts which he owed to the plaintiff and others, and the plaintiff purchased the land at a sale under this deed of trust. He, at a subsequent date, purchased the same land at a sale under an execution on a judgment against Link. The defendant was not a party to the deed of trust, nor to the division of the land between Howell and Geo. W. Link.

In a suit of partition between the heirs of Sarah Howell and the defendant, commenced in 1878, one-half of the 480 arpents was set off to Mary I. Link; before the commencement of this suit she was divorced from Geo. W. Link because of his fault. When Goodwin purchased the 245 acres in 1841, he gave Martin McCourtney two notes of five hundred dollars each, for part of the purchase price of the land; and the evidence tends to show that he then, or about that date, took possession of the land purchased by him. Sloan and Krepps claimed to have acquired the 480 arpents under an execution sale against John McCourtney; and Sloan set up this claim against both Martin McCourtney and Goodwin, and much litigation ensued down to the death

of Martin McCourtney in 1852.   Soon thereafter, and in 1853, Sloan and the heirs of Krepps commenced another suit in ejectment against Bacon, the tenant of Ann McCourtney, and to which she was a defendant, for the possession of the whole 480 arpents.   Goodwin was not then nor thereafter in possession of the 245 acres. The defendants in that case set up the statute of limitations as a defense and on the trial the plaintiff took a non-suit, which judgment was affirmed in this court in 1862.

Geo. W. Link, whose deposition was taken by plaintiff, but read by the defendants, says the old notes were not paid up on account of a suit by Sloan ; that they run out of date and were never paid ; that he got possession of them and gave them to Goodwin ; that he and Howell gave these old notes and five or six hundred dollars to Goodwin for the quit-claim deed ; and that he went to Shelby county, where Goodwin resided, and got the deed. The evidence before recited tends strongly to show that Goodwin had abandoned his purchase of the 245 acres, even before the death of Martin McCourtney. It was admitted on the trial that Ann McCourtney never had actual possession of the 245 acres or any part thereof, though she resided on the enclosed portion of the 480 arpents not by her husband sold to Goodwin, and she claimed to own the whole 480 arpents down to the date of her death, a period of some thirteen or fourteen years.

1. We deem it unnecessary to recite the instructions given and refused. It is sufficient to say that the court refused all that were asked by the defendant, and gave a number at the request of the plaintiff. The theory of the defendant's refused instructions is, that the record in the ejectment suit of Sloan and others against Ann McCourtney and Bacon, her tenant, gave her color of title to the 480 arpents, that she acquired the title to the whole by the statute of limitations, and at her death the property descended to her heirs. The

theory of the plaintiff's instructions is, that even if the record in that ejectment suit does constitute color of title, still defendant must fail in this defense because Ann McCourtney had no actual possession of any part of the 245 acres sold to Goodwin. Since Ann McCourtney did not have actual possession of the 245 acres it must be shown that she had color of title to the larger tract in order to give her constructive possession of the part sold to Goodwin. Much is said in the books as to what will and what will not constitute color of title, and many of the cases are exceptional in their character. Generally, it may be said that any writing which purports to convey the title to land by appropriate words of transfer, and describes the land, is color of title, though the writing is invalid, actually void, and conveys no title. *Fugate v. Pierce*, 49 Mo. 234; *Hamilton v. Boggess*, 63 Mo. 234. But the judgment in the action of ejectment upon the nonsuit taken by the plaintiffs in that suit does not give or even purport to give title. Ann McCourtney did not go into possession of any part of the large tract of 480 arpents under or by virtue of that judgment. She was in actual possession of the part not sold by her husband to Goodwin, when that suit was commenced, claiming the whole. The record in the ejectment suit is good evidence to show that she made claim to the whole. She asserted possession of the whole and defended that possession for a period of eight or nine years in the different courts, and this act was an act of ownership, on her part, and the record in that case is good proof of that act, but it cannot be regarded as color of title.

Her claim to the 245 acres is based upon the ground that Goodwin failed or refused to pay the purchase price and abandoned his possession, and she resumed the claim of ownership of her late husband. When one quits possession the seizin of the owner is restored. Here it is true Goodwin was still the owner; but we conclude that where a vendor sells a part of a tract of

land, being in possession of the whole, and the vendee refuses to pay the whole or a part of the purchase price, and abandons his possession taken under the purchase, and the vendor takes control of the whole, his claim is to be ascribed to his former ownership. It is the limits of his former title that define the boundaries of his claim. So here, Ann McCourtney had color of title, but it was the title by which her husband held the 480 arpents and not the record in the ejectment suit.

The next question is, was it essential to the defense that Ann McCourtney should have had actual possession of some part of the 245 acres ? This is the most important question on this branch of the case. It is to be remembered, in the consideration of this question, that the proof is, that from 1852 to 1866, Ann McCourtney resided in a house on the part of the 480 arpents not sold to Goodwin, being about one-half of the whole, and that during all that time Goodwin did not have actual possession of any part of the 245 acres. All the circumstances in evidence tend to show that during this time he made no claim to it. The evidence leads to the conclusion that there was nothing in the nature of a division fence between the two parts. The principle of law has been applied in several cases in this court that where a large tract embraces several smaller ones, actual possession of one of the smaller lots only by the person claiming the large tract will not be a defense against a superior title to any one of the other small lots. *Schultz v. Lindell*, 30 Mo. 310 ; *Tayon v. Ladew*, 33 Mo. 205 ; *Leeper v. Baker*, 68 Mo. 400. So it is said " a distinction is also made by many of the courts between lands laid out into distinct lots and those which are not, and in the former case it is held that an entry upon and possession of one lot, under a conveyance which embraces several, cannot be extended by construction to other lots not actually occupied." Wood on Lim. Act., sec. 262, p. 547.

In the first two cases just cited, the lots were common-field lots, the title to which was vested in the former occupants by an act of congress, and the larger tracts were subsequent New Madrid locations. We do not question the principle of those cases as a general rule, but we think it does not apply to a case like the one in hand where the vendor is in possession of a large tract of land and sells off a part, and the vendee fails or refuses to pay for the land so purchased and abandons the possession which he took under the purchase. The statute enacts that "the possession of a part of a tract or lot of land, in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract so claimed, shall be deemed a possession of the whole of such tract." 2 R. S. 1855, p. 1046, sec. 5. Under the guide of this statute, the person invoking it must, under color of title, have actual possession of some part of the tract in the name of the whole, and he must exercise the usual acts of ownership over the whole tract, during the period of ten years. See same section, R. S. 1879, sec. 3223. What will be usual acts of ownership must depend upon the situation of the property and the uses to which it would usually be put in connection with the whole. Here the part in dispute seems to have been unimproved and largely in a state of nature, not even enclosed. The fact that Ann McCourtney did assert and defend her possession to the whole tract against the assaults of the alleged superior title of Sloan and Krepps is an act of ownership. In view of the condition of the property and the evidence of abandonment of actual possession by Goodwin, the defendant made a showing upon which Ann McCourtney would have been entitled to go to a jury.

The question remains whether the defendant can avail herself of the possession by her mother. Ann McCourtney's claim came to her through her deceased husband. Under the law as it then stood, she was entitled to her quarantine in the whole plantation until

dower was assigned, which it appears was never done. Her possession of the estate of her deceased husband was not adverse to his heirs. *Brown v. Moore*, 74 Mo. 633 ; *Roberts v. Nelson*, 87 Mo. 229. She held these 245 acres as a part and parcel of the whole tract of 480 arpents and by the same right. The position that defendant acquired the property by inheritance from her mother is untenable. She takes by inheritance from her father. While Ann McCourtney's possession was not adverse to the heirs, it was evidently adverse to all the world, except those who may be entitled to the property on the expiration of her estate. If the full period of adverse possession, ten years, expired before the death of Ann McCourtney, then the title of Goodwin was barred, and Link and Howell took nothing by the quit-claim deed.

Whether there was such a privity between the widow, whose estate was but a life estate, and the heirs of the deceased husband, as to permit the heirs to tack their possession to that of the widow, presents a more difficult question. Speaking of what will constitute such privity, it was said in *Crispen v. Hannovan*, 50 Mo. 549 : " There must be a privity of grant or descent, or some judicial or other proceeding that shall connect the possession, so that the latter shall apparently hold by right of the former. Not even a writing is necessary, if it appear that the holding is continuous and under the first entry." The test question, it is said, is, "whether the occupation of the subsequent tenant is referable to the same entry, and under the same ' claim of right,' as it is called, as that of the prior occupant; in other words, whether the occupation of the one constitutes but a continuation of the possession of the other." Sedg. & Wait on Trial of Land Titles, sec. 747.

In a late case in Massachusetts the court made use of the very pertinent observation : "It is claimed that there is no such privity between the life tenant and the remainderman, because the latter in no sense claims

under the former. But the answer is, that both claim under the same will or by one title. The disseisin, which was commenced by the testatrix, is continued by each in accordance with that title, and is referred by each only to the entry of the testatrix." *Haynes v. Boardman*, 119 Mass. 415.

Here Ann McCourtney and the children of herself and her former husband hold by the same right. The disseizin which was commenced by Ann McCourtney is continued by the children. When her estate ends that of the children begins. Both estates take their origin in and by virtue of the same color of title, and there is no interruption of the disseizin; so that there can be no restoration of seizin of the true owner. Whilst there are cases and statements in text-books which would lead to a different result, still we believe the authorities before cited assert the correct rule, and it follows from them as well as from right reason that the possession of the heirs and that of the widow may be tacked for the purpose of making up the statutory period of limitation.

It therefore follows that, if Goodwin failed or refused to pay the notes which he gave in part payment for his purchase of the 245 acres and abandoned the possession thereof, and Ann McCourtney, or she and the heirs of Martin McCourtney, for a period of ten years had actual possession of a part of the 480 arpents, and during that period claimed the whole and exercised over the whole usual acts of ownership, then the defendant should prevail, and appropriate instructions should be given on this theory of the case. The plaintiff's fourth instruction should be refused; for under it and the admission as to want of actual possession in Ann McCourtney the finding could only be for the plaintiff on the statute of limitations.

2. It is competent to show that suits were prosecuted against Goodwin and McCourtney for the land

prior to the one commenced by Sloan and the heirs of Krepps, for they show a cause and reason why Goodwin left the property and failed or refused to pay the notes, namely, that he abandoned the property because of that litigation. Should proper objections be made to secondary evidence, the records of those suits· will be the best evidence of what was done. No more need be said in respect to the opinion of the court in Sloan *et al. v. Bacon et al.* now agreed into this record.

3. A further question is, whether the plaintiff, claiming as he does under Geo. W. Link, can recover on the title acquired by Link from Goodwin by the quitclaim deed, or whether that title enured to the benefit of Mary I. Link, the then wife of Geo. W. Link. It is a rule of equity everywhere that a person placed in a situation of trust and confidence with respect to the subject of a purchase cannot retain the purchase for his own benefit. He cannot hold on to the purchase when he has a duty to perform inconsistent with his position of purchaser. No more confidential relation is known to the law than that of husband and wife. It would be a sad commentary on our laws if the husband were permitted to buy up an old claim to his wife's property, which had been abandoned for thirteen or fourteen years, and with it turn her out of possession.

In *Swisshelm's Appeal*, 56 Pa. St. 475, a married woman purchased an undivided interest in certain lands subject to liens thereon, and in which lands her husband was a joint owner. Her interest was sold under the liens in her absence and purchased by the husband without her consent. Says the court in respect of this purchase by the husband : " No court of law or equity could ever permit so gross an abuse of the marriage relation. The only effect of the purchase by the defendant was to preserve the estate for his wife, the plaintiff, and the court below was·clearly right on this point."

In *Young v. Adams*, 14 B. Monroe, 127, one theory

of the case which the evidence tended to show was, that the husband took possession of a tract of land of his wife, her claim of title extending to the whole tract. He then purchased a claim to an undivided one-third, which claim so purchased was adverse to the claim of the wife to the whole. He sold off parts of the tract to different persons. The wife did not join in these deeds, and after his death, she brought ejectment against the persons to whom the husband had sold parts of the land. It was held that if the husband took possession of the whole survey under the claim of his wife, and claimed the whole of the land as hers, then the purchase of the outstanding claim of one-third enured to her benefit, even as against the husband's grantees.

As a general rule of law, if one tenant in common purchase an outstanding adverse title, he cannot use it to evict the other co-tenants, and the purchase will enure to the benefit of all of the tenants in common. *Jones v. Stanton*, 11 Mo. 433; *Picot v. Page*, 26 Mo. 398. "So a release of a right made to a particular tenant for life, or in tail, shall aid and benefit him or them in the remainder." Coke on Litt., sec. 453.

Now the evidence in this case tends to show that Goodwin refused to pay the notes which he gave to Martin McCourtney for part of the purchase price of the 245 acres; that Goodwin abandoned the possession of the land; that Ann McCourtney, the widow of Martin McCourtney, claimed the whole 480 arpents and defended her claim thereto against adverse claims. She was in possession of a part at least claiming the whole from 1852 to 1866, when the defendant as one of the children of Ann and Martin McCourtney became entitled to her share of the lands of her deceased parents. It was the duty of Geo. W. Link, as the husband of the defendant, to protect and not destroy his wife's inheritance. He had a marital right and curtesy initiate in his wife's lands. When he purchased this adverse claim from Goodwin, the claim thus

acquired enured to the benefit of himself and wife according to their interests in the land before the purchase. He and his grantees, as against her, had no other interest in the property than he had before the purchase. It remained but a marital interest, and as the divorce was for his fault he forfeited all right to her real estate. It follows from what has been said that the defendant's fourth instruction should have been given.

The court also erred in giving the plaintiff's first instruction, for it deprived the defendant of all of her defenses save that " of title acquired by Ann McCourtney under the statute of limitations." To the defense we have been considering it is not necessary that Ann McCourtney should have had ten years adverse possession. It is enough to entitle this defense to prevail to show that Goodwin, in 1853 or prior thereto, declined to pay the notes, abandoned the possession of the property, and that Ann McCourtney thereafter and to her death claimed the land and defended the title against the adverse claim of Sloan and the heirs of Krepps.

If we are correct in saying that the purchase of this adverse claim by Geo. W. Link enured to the benefit of himself and his wife, and to himself only to the extent of his marital interest in his wife's property, then this defense is available to defendant in an action of ejectment under the general denial.

The judgment is therefore reversed and the cause remanded for a new trial. BARCLAY, J., not sitting; the other judges concur.