Schultz v. Lindell.

———————

SCHULTZ *et al.*, Appellants, v. LINDELL *et al.*,.Respondents.

1. The actual possession of a part of a tract of land by the rightful owner carries with it the constructive legal possession and seisin of the whole tract so far as the same is not *actually* occupied adversely by another.

2. Where, however, the true owner of a tract of land is not in the actual possession of any portion of such tract, the actual possession of a part of the same by another, who is in such possession under a colorable title to the whole, will carry with it a constructive possession of the whole tract as against such true owner.

3. Where a large tract embraces and includes several smaller tracts, an actual possession by the owner of the large tract of a small portion of the same outside of one of the smaller tracts included in it will not be construed to be a constructive adverse possession of such smaller tract against the true owner thereof, although the latter may not be in the actual possession of any portion of his tract.

4. Where a defendant in ejectment seeks to show an outstanding title in another, and offers in evidence a deed executed by the same parties under whom plaintiffs claim, he may by extrinsic evidence, if the descriptions and calls of the two deeds are different but not repugnant, show that the calls are such as will make the deed under which defendant claims embrace the same land conveyed to plaintiffs.

5. The *opinion* of a surveyor as to the proper *location* of a grant or conveyance of land is inadmissible in evidence to determine such location.

*Appeal from St. Louis Land Court.*

This was an action to recover possession of a portion of a tract of one by forty arpens of land situated in the Grand Prairie common field, near St. Louis. This case has heretofore been before the supreme court. (See 24 Mo. 567.) The action was commenced September 19, 1855. Said tract of one by forty arpens was confirmed by act of Congress of July 4, 1836, to William Bizette's representatives, and surveyed by United States survey No. 3340. Plaintiffs also claim title under John B. Provenchere, to whom, it is alleged, the land was confirmed by act of Congress of June 13, 1812.

The defendants denied the plaintiffs' right of possession and set up the statute of limitations.

The plaintiffs introduced evidence tending to prove the claim, cultivation and possession of the lot in question by John B. Provenchere, an inhabitant of the town of St. Louis, as the last claimant and cultivator prior to December 20, 1803; also the location and boundaries of the lot, and its identity with that surveyed by United States survey No. 3340; the death of John B. Provenchere; that Jean Louis Provenchere was his son and entitled as heir to one-half of said lot. Plaintiffs showed a derivative title from said Jean L. Provenchere to said half. Plaintiffs adduced in evidence, to make out this derivative title, a deed, dated July 29, 1816, and acknowledged July 31, 1816, executed by Mary Provenchere, widow, and said Jean Louis Provenchere, son of said John B. Provenchere, conveying to Risdon H. Price a tract described as follows: " A certain tract or parcel of land situate, lying and being at the place commonly known by the name of Big Prairie, about three and a half miles west of St. Louis, and containing one arpent in front by forty arpens on the rear, bound north by land now belonging to Joseph Lacroix, as it is said, and south by land cultivated formerly and said to belong to one Simoneau, it being the same tract or parcel of land which the said John B. Pro-

venchere, in his lifetime, cultivated for many consecutive years prior to 1803."

The defendants, for the purpose of showing title out of plaintiffs, offered in evidence a deed from the grantors of the above conveyance—Mary and Jean Louis Provenchere—to Joseph Phillipson and Sylvester Labadie. This deed was dated and acknowledged July 25, 1816. The land conveyed by this deed was described as follows: "A tract of land lying and being situate at about three miles and a half in the western part from the town of St. Louis, at the place commonly denominated 'Grand Prairie;' which land contains two arpens in front by forty in depth, and is bounded on the north side by a road thirty-six feet broad, which separates it from the land which Pierre Chouteau bought of Alexis Marie, and on the south side by the land of an owner unknown; on the east and west by vacant lands; which land belongs to us, as having been cultivated during a number of years by the said Jean Baptiste Provenchere, deceased, and whose heirs we are," &c.

The defendants introduced as witnesses Augustus H. Evans and William H. Cozens, practical surveyors, into whose hands the above deeds to Price and to Phillipson and Labadie, as also various other deeds conveying lots in the Grand Prairie common field, were placed; the testimony of a witness, Noisé, was also read to said witnesses from the notes of counsel, and they were asked to state, as experts, where, by the calls in said deeds and the testimony, they would locate the tracts conveyed by said deed. The witnesses were permitted to answer these questions against the objection of the plaintiffs. Other evidence was introduced bearing upon the locations of the tracts conveyed by said two deeds of Mary and Jean Louis Provenchere.

Evidence was also adduced with a view to support the defence of the statute of limitations. The defendants put in evidence deeds conveying to them the land embraced within the Hunot and Conway New Madrid locations; also other arpent lots in the Grand Prairie. The New Madrid loca-

tions included said smaller tracts and also much more besides. Evidence was introduced showing an actual possession, for twenty years, on the part of said Lindell, of a portion of said New Madrid locations outside of the lot in controversy. No deed was shown conveying to defendants the particular lot in controversy.

The court gave the following instructions at the instance of the plaintiffs: "1. If the jury believe from the evidence that John Baptiste Provenchere, as an inhabitant of the town or village of St. Louis, prior to the 20th day of December, 1803, claimed and cultivated or possessed the lot of land mentioned and described in the petition as a common field lot adjoining or belonging to said town or village, and was the last claimant and cultivator thereof prior to that date; and if the jury further believe from the evidence that said John Baptiste Provenchere died prior to the 29th of July, 1816, leaving Mary Provenchere his widow, and a son, Jean Louis Provenchere, and a daughter, Madame Lajoye, as his only heir or heirs living at his death, and that the deeds given in evidence by the plaintiffs to show a derivation of title to them from said Jean Louis and widow Mary Provenchere are genuine, and that the lot mentioned in said deeds is the same lot which was so claimed and cultivated or possessed as aforesaid by said John Baptiste Provenchere, then the plaintiffs are entitled to recover one undivided half of so much of said lot as the jury find to have been in the possession of the defendant at the commencement of this suit lying outside of the Mad. Camp survey; unless the jury also find that the lot mentioned and described in the deed of said Mary and Jean Louis Provenchere to Joseph Phillipson and Sylvester Labadie, dated July 25, 1816, covered the same land mentioned and described in said deeds given in evidence by the plaintiffs. 3. The jury are instructed that the legal seisin and possession follow a title under the act of Congress of June 13, 1812, and that the defendants, setting up an adverse possession for twenty years against such legal seisin and possession, must show by evidence, to the satisfaction of the jury,

that they or either of them have had a visible, notorious and continuous possession of the land in controversy during the period next before the commencement of this suit; otherwise the statute of limitations is no defence against such a legal title and possession. 4. The jury are instructed that the United States survey No. 3340, given in evidence by the plaintiffs, is evidence of the location, extent and boundaries of the lot which was confirmed by the act of July 4, 1836, to Guillaume Bezette's legal representatives; and if the jury believe from the evidence that the same lot came into the possession of John Baptiste Provenchere, and was claimed, cultivated or possessed by him, and in his own right, as an inhabitant of the town of St. Louis, as a common field lot, adjoining or belonging to said town, prior to the 20th of December, 1803, as the last claimant and cultivator thereof prior to that date, then said survey is evidence of the location and boundaries of the lot claimed and cultivated or possessed by him."

The court refused the following instruction asked by the plaintiffs: "2. If the jury believe as required by the foregoing instruction No. 1, in order to enable them to find for the plaintiffs, then the jury is further instructed that the defendants have given no evidence of adverse possession of the land in controversy for twenty years next prior to the commencement of this suit, which is sufficient in law, if true, to constitute a bar to this suit under the statute of limitations."

The court gave the following instructions at the instance of the defendants: "1. If the jury believe from the testimony that the defendants, or either of them, have had possession of the land in question, using and claiming the same as their own, and holding it adversely to the plaintiffs and to those under whom they claim for the space of twenty years or more next before the commencement of this suit, the jury ought to find for the defendants. 2. And as to what is possession in the sense of the above instruction, if the jury find that the defendants entered into possession of part of the tract, claiming the whole by deed, and asserting ownership

of the whole, [that is possession of the whole] if there be no actual, adverse possession held by some other person. An enclosure by a fence is not necessary to constitute possession, legal or actual."

The jury found for defendants.

*N. Holmes,* for appellants.

I. The instruction given for defendants, No. 2, was contradictory in principle to that given for plaintiffs; it was unsound in point of law and tended to mislead the jury. (Griffith v. Schwenderman, 27 Mo. 412; McDonald v. Schneider, 27 Mo. 405.) Possession of part claiming the whole under color of title is not an adverse possession as against the constructive possession of the true owner beyond the actual adverse occupancy. (Ang. Lim. 400, 410.) Defendants did not claim under any deed describing the particular lot, but under deeds describing the larger tracts of the New Madrid locations. There was no actual adverse occupancy of this lot, or any part of it, for twenty years. Plaintiffs' second instruction should have been given. Defendants' instruction should have been refused, as not warranted by the evidence.

II. The deed from Mary and Jean Louis Provenchere to Phillipson and Labadie should have been excluded. It did not purport to convey the lot in controversy, but another and wholly different lot. Evidence *aliunde* for the purpose of showing that it did convey, or was intended to convey the lot in controversy, was inadmissible. The call for two by forty arpens was essentially descriptive. (4 Cruise, Dig. p. 334–9; 3 Pick. 4.) The call for " a land of an owner unknown" on the south adds nothing to the call for quantity. (See 10 Metc. 17; 3 Pet. 92; 18 Mo. 87.) There was nothing on the face of the deed nor any evidence *aliunde* offered to show that the two by forty arpent lot had ever been located on the ground, or had ever existed at that place. There is nothing in the deed, except the call for two arpens front, to give width to the lot, to constitute a tract of land. Strike it out and the deed becomes void for uncertainty. It can not

be rejected as repugnant. (See 4 Mass. 196.) Evidence *aliunde* can not be admitted to introduce new words into a deed. (8 Bing. 244; 1 Greenl. Ev. 301; 4 Cruise, Dig. p. 296.) The call for two arpens front is not a latent but a patent ambiguity. (Bac. Max. Reg. 23; 1 Greenl. Ev. § 297.) Evidence *aliunde* is not admissible to make a deed convey a different thing from that described in it. Besides, the evidence introduced by defendants to explain the only call that admitted of such explanation in reference to the subject matter of the grant, the northern call, wholly failed to show that the thing described ever had an existence at all at that place. The legal effect of the instrument is for the court to declare. (9 Mo. 603; 1 Dev. & Bat. 425; 4 Cru. Dig. p. 295; 3 Washb. 294; 5 Greenl. 496; 28 Mo. 407.) The subjects of grant described are not the same on the face of the two deeds. The call on the north may admit of explanation, but the others not. Both deeds were with special warranty against the grantors themselves. They were contemporaneous. (17 S. & R. 110; 7 Mass. 499; 5 Scott N. R. 1037; 28 Mo. 479.)

III. The opinions of the witnesses Evans and Cozens, practical surveyors, should not have been admitted to locate the deeds and the lots in controversy. The disseisin of the matters in issue was taken away from the jury and given to these witnesses. Their *opinions* were inadmissible. (Blumenthal v. Roll, 24 Mo. 113; 8 Mar. N. S. 695; 10 N. Hamp. 130; 1 Greenl. Ev. § 440; Williams v. Carpenter, 28 Mo. 461.)

*B. A. Hill*, for respondents. *

EWING, Judge, delivered the opinion of the court.

It is insisted that the instruction given for the defendant defining adverse possession was contradictory in principle to that given for the plaintiff on the same subject; and it is maintained that possession of a part claiming the whole under color of title is not an adverse possession, against the

---

* There is no brief on file in behalf of respondents.

constructive possession of the true owner, beyond the actual adverse occupancy. This proposition, in the general terms in which it is stated, we think, is incorrect as applied to the case before us. Its correctness would not be questioned as applicable to cases where the true owner and an intruder, or even one holding by color of title, are both in possession of different parts of the same tract. In such cases, the actual occupancy of a part by the rightful owner carries with it the constructive legal possession and scisin of all not actually occupied adversely. (Hale v. Powell, 4 Serg. & R. 465.) But a different doctrine prevails where the rightful owner is not in possession at all, and the adverse holding is by color of title. If A., with color or claim of title, enter upon the land of B., who has the superior title, his possession is not adverse as to B. beyond the part actually occupied by him, if B., the rightful owner, is also in possession of another part of the same land. In that case, both being in possession, the constructive possession of B. prevails over all not actually occupied by A., by virtue of his superior title. If, however, he who claims to be the true owner is not in possession, the possession of him who is in under a colorable title is construed to be coextensive with the premises described by his deed; and this is the character of the case at bar. The controversy here is not between two persons in the actual possession of different parts of the same tract as to their respective rights to that part not actually occupied by either, but as to the effect of a possession by the defendant with a color of right against the plaintiff, who claims to be the rightful owner, but is out of possession. It is not pretended that the plaintiff, or those under whom he claims, have had possession since 1812.

The *locus in quo* is a small tract of 34 30-100 arpens, a concession to William Bizette, situated in the Grand Prairie, numbered as survey No. 3340, confirmed by act of Congress, and which it is claimed lies within New Madrid locations, which are the source of the defendants' title. There was evidence tending to show that a part of the lot in dis-

pute, as well as other portions of the larger tract, was in the adverse possession of the defendant for more than twenty years before the commencement of this suit; but there was no evidence of possession within that period by the plaintiffs or those under whom they claim; and, upon the facts disclosed on the trial, the question is whether the law was properly declared in the instructions given on the subject of adverse possession.

The instructions given at the instance of the plaintiffs tell the jury that the legal seisin and possession follow a title under the act of June 13, 1812; and that the defendants, setting up an adverse possession for twenty years, must show, by satisfactory evidence, that they, or either of them, have had a visible, notorious and continuous possession of the land, &c., during that period. For the defendants, the jury were told that if they, the defendants, have had possession of the land in question, using and claiming the same as their own, and holding it adversely to the plaintiffs and those under whom they claim, for the space of twenty years or more next before the commencement of the suit, there ought to be a finding for the defendants. Possession, in the sense of this instruction, is defined to be, that if the defendant entered into possession of part of the tract, claiming the whole by deed, and asserting ownership of the whole, this is possession of the whole, if there be no actual adverse possession. An enclosure by fence is not necessary to constitute possession, legal or actual.

The last instruction was a proper qualification, under the evidence in the case, of the propositions embraced in the plaintiffs' instruction; and they are consistent with each other. The defendants were entitled to the benefit of the distinction, implied in their instruction, between a mere intruder and one entering into possession with a claim of right. If the defendants entered upon the land in dispute, and had possession of a part, the deed under which they claimed described the boundaries within which the jury were to determine, under the instructions, whether there was such an

assertion of ownership and use of the premises as to bar the plaintiffs' right of action. They were to ascertain whether there was in fact a possession of a part of the tract, claiming the whole, and, if so, whether there was such a use as, in the language of the plaintiffs' instruction, was visible, notorious and continuous.

Where a large tract embraces several smaller ones, a *pedis possessio* of a few acres, by one setting up title to the larger tract, claiming the whole, would not be a defence against a superior title in any one of the smaller tracts. There is in such case no ouster of the owner of the smaller tract, because the possession, being of a part of the larger tract not included in his, is not adverse to him; and the constructive possession following his title will prevail against any other but an actual possession. Where, however, the rightful owner of one of the smaller tracts is not in possession, and the claimant of the large one enters upon and encloses a part of the former, and continues in possession for twenty years, claiming the whole, he would not be confined to the part actually occupied, but his possession would be construed to be coextensive with the boundaries of the deed. The second instruction asked by the plaintiffs was properly refused.

The admission of the deed read in evidence of Mary and Jean Louis Provenchere to Phillipson and Labadie is assigned for error. This deed was dated July 25, 1816, four days before the date of that from the same grantors to Price, under which the plaintiffs claim title. The deed was offered to show an outstanding title; and the objection to its admission is that it does not purport to convey the lot in controversy, but another and wholly different lot, and that evidence *aliunde*, to show that it did convey, or was intended to convey, the lot in dispute, was inadmissible. The calls in the deed under which plaintiffs claim title are for a tract of land in a place commonly known as the Big Prairie, about three and a half miles west of St. Louis, containing one arpent in front by forty arpens in the rear, bounded north by land now belonging to Joseph Lacroix, as it is said, south by land culti-

vated formerly and said to belong to one Simoneau, it being the same tract or parcel of land which the said John B. Provenchere, in his lifetime, cultivated for many consecutive years prior to 1803. The deed to Phillipson and Labadie described the land it conveys as lying in the Grand Prairie, and which land contains two arpens in front by forty in depth, and is bounded on the north side by a road thirty feet broad, which separates it from the land which Pierre Chouteau bought of Alexis Marie, and on the south by land of an owner unknown, on the east and west by vacant lands, which land belongs to us as having been cultivated during a number of years by the said Jean Baptiste Provenchere, deceased.

Though the subjects of the grants are not the same on the face of the deeds, they may be so in point of fact; and if there is nothing absolutely repugnant in the description or calls, then evidence *aliunde* is admissible to identify them. As to the northern boundary, it is obvious there is no such repugnancy.

But it is insisted that the calls on the other three sides, being for quantity alone, are therefore essentially descriptive, and do not admit of any explanation or modification by extrinsic evidence. It may be admitted that the calls for quantity are essentially descriptive, yet it does not follow that the conclusion drawn therefrom is correct. The deed to Price is for one by forty arpens, with Lacroix's land for the northern boundary, containing one arpent in front by forty in depth. The deed to Phillipson and Labadie calls for two arpens in front by forty in depth. It is true, there is nothing in the deed to give *width* to the lots except the call for two arpens front, but it is not necessary to strike out two and insert *one* arpent in order to make it a description of the lot in controversy, or of a tract including it; and it is therefore not liable to the objection of introducing new words and a new description into the body of the deed.

Now supposing the call for quantity in the deed to Phillipson and Labadie is essentially descriptive, it may nevertheless include the land in dispute; for if the calls for the

Schultz v. Lindell.

northern boundary are not on the face of the deeds repugnant, as it is obvious they are not, then neither is there any repugnancy in the calls on the east and west; that is, from any thing appearing on the deeds, they may coincide to the extent of one arpent. Both tracts have the same depth, each being forty arpens. The call for quantity, then, of two by forty arpens may be satisfied without any conflict with the description of the deed to Price. It is only upon comparing the two deeds as to quantity that there is perceived on their face any difference, but this difference consists only in the calls for the front. One being for one arpent front, the other *two*, does not make them irreconcilable. It is the difference only between the whole of a thing and the parts of which it is composed, and not of things essentially distinct. In other words, there is nothing on the face of the deeds showing that as a matter of fact three of the corresponding boundaries in the two deeds—north, east and west—*may* not perfectly coincide throughout their whole extent; and if their identity may be shown thus far, the call for the additional quantity of one arpent may be satisfied by producing the east and west lines to the distance of two arpens from the northern line; and thus show the identity of the lot in dispute with a part of the tract described in the deed to Labadie and Phillipson—the greater including the less.

The opinions of the witnesses Evans and Cozens, as to the location of the lot in controversy and of those described in the other deeds read in evidence, were incompetent and improperly admitted; (Blumenthal v. Ralls, 24 Mo. 113;) and for this the judgment will be reversed and the cause remanded. The other judges concur.

[END OF MARCH TERM.]