Benne v. Miller.

BENNE v. MILLER et al., Appellants.

Division One, March 31, 1899.

1. **Ejectment:** EXTENT OF INTRUDER'S POSSESSION.   If the true owner is not in actual possession of any part of the land, and an intruder with color of title is in possession of a part, claiming the whole and exercising over the whole such acts of ownership as the circumstances allow, he will be held to have the constructive possession of all his colorable title calls for.

2. ———: ACCRETION.   An accretion becomes a part of the land to which it is built, and follows whatever title covers the main land, whether it be title by deed or title by possession.   It is not necessary that the possession of the accretion should be held for ten years to give the possessor title, because title to it follows title to the main land, and when the main land is held under the conditions and for the length of time required by law to vest its title in the possessor, the title to the accretion follows, even though the deposit had been made but a year or a day.

3. ———: PRACTICE: NO DENIAL OF PLAINTIFF'S TITLE.   Although defendant's answer did not deny plaintiff's title, but set up an adverse possession, yet if the court and both parties tried the case on the theory that a denial had been made, it will be disposed of upon the same theory on appeal.

4. ———: WHAT CONSTITUTES POSSESSION. There is no precise rule prescribing what should constitute adverse possession. The circumstances of each case, the location and condition of the land, must be taken into consideration, and the acts of ownership must be understood as directed to them.

5. ———: DIVISION OF ACCRETIONS AMONG RIPARIAN OWNERS. Two riparian owners are entitled to share in the accretions in the proportion that the river front of each bears to the entire river front.

6. ———: DESCRIPTION OF LAND IN VERDICT. A verdict in ejectment should so describe the land which it is intended that plaintiff shall recover, that the description, when copied into the sheriff's writ of ouster, will of itself show him the land he is to take from defendant and restore to plaintiff.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

WM. H. CLOPTON for appellants.

. (1) The law is that every riparian proprietor is entitled to a frontage of the same width on the new shore as on the old, without regard to the side lines of the upland, except where the new shore is longer or shorter than the old, when a ratable distribution of the accretions is ascertained. Gould on Waters, sec. 162; Crandall v. Allen, 118 Mo. 403. (2) The first, second, third and fourth instructions given for the plaintiff are erroneous, because they assume: First, that the plaintiff had shown a legal title to the whole tract sued for; secondly, they are erroneous in that they direct the jury that the statute of limitations, in defendants' favor, must have run ten years in favor of the defendants prior to February 23, 1881, when plaintiff's ancestor died; third, the instructions are erroneous because they define adverse possession to be entirely dependent upon clearing, cultivating or fencing the land. Wilkerson v. Eilers, 114 Mo. 245; Grant v. Moore, 128 Mo. 49; Nye v. Alfter, 127 Mo. 529.

The death of the ancestor in 1881, against whom the statute had begun to run, did not stop the running of the statute of limitations.    Pim v. St. Louis, 122 Mo. 666; Rodgers v. Brown, 61 Mo. 187; Cunningham v. Snow, 82 Mo. 587. (3)    The third instruction is illogical, unintelligible, and is erroneous in that it directs the jury that adverse possession can only be maintained by clearing, cultivating or fencing, when the law is that adverse possession may be maintained by such acts as will advise the true owner (if there be one) of the fact that the land is claimed adversely to him, and such possession is determined in a great measure by the character of the land in controversy.    (4)    The instructions as given were inconsistent, repugnant and contradictory.    In instruction number 1 given for defendants, the court tells the jury that a riparian owner's river front can not be encroached upon, whereas in instruction number 3 for plaintiff he tells the jury that by the plaintiff's deed he owned all the lands sued for.    Neuscher v. O'Bannon, 56 Mo. 289; Stevenson v. Hancock, 72 Mo. 612; Stone v. Hunt, 94 Mo. 475; Schen v. Lemp, 17 Mo. 142; State v. Hewett, 97 Mo. 105; Cooley v. Warren, 53 Mo. 166; Rutherford v. Tracy, 48 Mo. 325; Grant v. Moon, 128 Mo. 49; Marshall v. Bumpal, 18 Mo. 84.

R. H. STEVENS for respondent.

(1)    The court is the sole judge of the legal effect of the deeds read in evidence taken in connection with all the evidence in the case and must so instruct the jury.    Tyler v. Hall, 106 Mo. 313; Slayback v. Gerkhardt, 1 Mo. App. 333; Nicholson v. Golden, 27 Mo. App. 132.    (2)    The jury, by their verdict, gave to appellants all the land Suess had in actual possession, up to and including the year 1886, therefore the clause in the instructions prior to the death of William Benne, father of plaintiff, February 23, 1881, could not and did not in any manner injure appellants.    Long v. Fair-

banks, 91 Mo. 635; R. S. 1889, sec. 2303; Ryan v. Kelley, 9 Mo. App. 596. (3) The appellants have no color of title and the disseizin will only extend to the part actually occupied. They are mere trespassers and are entitled to no relief in law or equity. Smith v. McCorkle, 105 Mo. 136, 141; Schutz v. Lindell, 30 Mo. 310; St. Louis v. Gorman, 29 Mo. 593; Chapman v. Templeton, 53 Mo. 463; Rannells v. Rannells, 52 Mo. 108. (4) Instructions must be based upon the evidence and the only evidence offered by appellants to show possession was. clearing, fencing and cultivating. (5) Instruction number 10 asked by appellants was properly refused by the court because the fact that the United States Government cut willows from the land in dispute and paid Suess does not in any manner tend to prove possession in Suess. It was not an act done by Suess and it does not of itself constitute open, notorious, continuous and adverse possession. Pharis v. Jones, 122 Mo. 125; Cook v. Farrah, 105 Mo. 492; Ward v. Ihler, 132 Mo. 375; Herbst v. Merrifield, 133 Mo. 262; Carter v. Hornback, 139 Mo. 238; Crawford v. Ahrens, 103 Mo. 88. (6) Instruction number 1 asked by appellants was properly refused by the court because accretions as they are formed take the title to the land just as it exists at the time of its formation. Campbell v. Laclede Gas Light Co., 84 Mo. 372. (2) The verdict of the jury is definite and certain and it is sufficient. Crawford v. Ahrens, 103 Mo. 88; Buse v. Russell, 86 Mo. 209.

VALLIANT, J.—This is an action in ejectment begun in 1895 for a tract of land fronting on the Mississippi in St. Louis county.

The petition is in the usual form.

The answer does not deny any of the allegations of the petition, but admits the possession, and pleads affirmatively that defendants and those under whom they claim have been

in actual adverse possession for more than ten years prior to the institution of this suit.    Nevertheless at the trial the parties on both sides and the court treated the case as if the plaintiff was put to his proof, and so it will be treated here.

The land in actual dispute is an accretion formed by river deposits.    Plaintiff introduced evidence tending to show a title to the land to which this is an accretion, regularly derived from the Government.

Defendants introduced evidence tending to show title by adverse possession beginning in 1874 and continuing to the date of the trial.    That portion of the river bank covered by defendant's claim under adverse possession is a small triangle, having the old bank for its base, embraced in the larger tract which plaintiff's paper title covers.

A discussion of the evidence will not be necessary except as incidental to the consideration which we will give to the instructions.

At the close of the case the court instructed the jury, on behalf of the plaintiff, as follows:

"1.    The court instructs the jury that the plaintiff is entitled to recover the possession of all the lands sued for, except so much thereof as was taken possession of by the defendants, or those under whom they claim, if any, prior to the death of William Benne, father of the plaintiff, February 23d, 1881, and held openly, notoriously, continuously and adversely for a period of ten years, and the jury must find a verdict for the plaintiff for the land not so taken possession of and held as above stated.

"2.    The court instructs the jury that the deeds from Jacob Suess to Charles Lewis, and from Charles Lewis to M. F. Taylor, and from M. F. Taylor to Louis Kolas, and from W. H. Clopton offered and read in evidence by defendants, did not give defendants color of title to the land in dispute, and plaintiff is entitled to recover all the lands in dispute not

cleared and cultivated, or fenced, prior to the death of William Benne, father of the plaintiff, February 23, 1881, and the possession was taken and continued open, and notoriously and adversely, for ten years after clearing, cultivating or fencing the same.

"3.   The court instructs the jury that the plaintiff, by his deeds offered and read in evidence, and by evidence that the land was formed by accretions to United States survey 1958, have established a perfect title to the land in dispute, and the verdict of the jury must be for the plaintiff, unless they further find from the evidence that the defendants, or those under whom they claim, entered into possession of the land in dispute prior to the death of William Benne, father of the plaintiff, February 23d, 1881, and held open, notorious and continuous, and adverse possession by clearing, cultivating or fencing for ten years.

"4.   The court instructs the jury that the defendants have not shown any color of title to the land in dispute, and they must find for the plaintiff for all the lands which the defendants or those under whom they claim did not clear and cultivate or put under fence prior to the death of William Benne, father of the plaintiff, February 23d, 1881."

The court was asked to instruct the jury as follows by the defendants:

"1.   The court instructs the jury that if they believe from the evidence that Jacob Suess cleared and cultivated the land east of the old levee, beginning at an old stone in the southeast corner of lot No. 7, of the Destrahan tract, and running eastwardly at right angles to said old levee toward the Mississippi river, and that he and those under whom he claims title have been in the open, public, notorious and adverse possession thereof, claiming title thereto for more than ten years prior to the institution of this suit, plaintiff is not entitled to recover any part of the land so occupied, nor any part of the accretions thereto."

Before giving that instruction as asked, it was modified by erasing these words: "nor any part of the accretions thereto," and substituting for said words the following: "by said Suess or his successors or assigns."

"2. The court instructs the jury that under the law of this State, persons owning land on or bounded by the Mississippi river own to the water's edge, and when the water recedes gradually and land is made thereby, the owner of the land bounded by the river is owner of the land so made, and such owner's rights to such made land remains equal to his river front and such riparian rights can not be encroached upon by adjoining owners so running their boundary lines as to diminish such river front or accretions.

"3. The court instructs the jury that the term accretion as used in the instructions in this case means portions of soil added to that already in possession of the owner by gradual deposit caused by a change in the bed of the river, and that accretion belongs to the owner of the land, and it makes no difference whether the accretions were formed before or after the ownership has accrued, and that ownership may be acquired by adverse possession as well as by deed."

The defendants asked the court to give the following instructions, which the court refused to give:

"1. The court instructs the jury that it is not necessary for the defendants to show title from the Government of the United States or from the State of Missouri; if the jury believe from the evidence that the defendants or those under whom they claim title have been in the actual, open, notorious and adverse possession of the land sued for, or of the land to which the eastern portion is an accretion for more than ten years prior to the filing of this suit, they will find for the defendants.

"2. The court instructs the jury that plaintiff can not recover in this case unless he has shown to the satisfaction of

the jury that he or those under whom he claims the possession of the land sued for, have been in the actual, open, notorious and adverse possession of the lands sued for for more than ten years prior to the institution of this suit.

"3.   The court instructs the jury that if they believe from the evidence that the defendants, or those under whom they claim title have been in the actual, open, notorious and adverse possession of the land sued for for more than ten years prior to the date of filing this suit, claiming title thereto, then the jury will find for the defendants.

"4.   The court instructs the jury that the burden of proof is on the plaintiff, and before he can recover in this case he must prove by a preponderance of the testimony that he or some one under whom he claims title has been in the actual, open, adverse and notorious possession of the land sued for for more than ten years before the filing of this suit.

"5.   The court instructs the jury that under the evidence adduced in this case, no title was conveyed by deed from James Monks and wife and James Lupe to Wm. Benne of date September 30th, 1880, read in evidence by the plaintiff, of any part of the land described in the petition in this case."

"6.   The court instructs the jury that by the deed of James Lupe and wife to James A. Monks, dated May 1st, 1860, a copy of which was read in evidence by defendants, James Lupe and wife conveyed to said Monks all the lands within the metes and bounds described in said deed, running to the old bank of the Mississippi river as it existed at the date of said deed, and the jury are instructed, if they believe the old river bank of the Mississippi river at the date of said deed, to wit, the 1st day of May, 1860, was on the line marked on plat introduced in evidence by defendants as the river bank in 1860, or was on the line marked on said plat between X and Y, they will find for defendants.   And the jury are instructed that, in considering the amount of land

conveyed by the deed, fixed monuments, such as river banks, control courses and distances.

"7. The court instructs the jury that actual, open and notorious possession such as will work a transfer of the title to land by what is called in the law as adverse possession, may be shown by evidence of the exercise of such acts of possession as consist with the character of the land, and if the jury believe from the evidence that Jacob Suess exercised such acts of ownership over the land shown to have been covered by willows by selling willows to the Government of the United States, such acts constitute possession in law."

A study of this case involves an examination of the law of title by adverse possession—distinguishing between constructive and actual possession—the character of occupancy necessary in either case, of title to accretions to land when title to the main land is acquired by adverse possession, and character of the occupancy necessary to constitute adverse possession of the forming accretions.

I. Where land is actually unoccupied the constructive possession is in the owner of the true title. [Douthitt v. Stinson, 63 Mo. 268; Turner v. Baker, 64 Mo. 218.]

If the true owner be in actual possession of one part of the tract, and an intruder, even though he have color of title, be in possession of another part of the same tract, and there be still another part unoccupied, the true owner will be held to be in the constructive possession of all that part not in actual occupancy; which is to say that in such case the possession of him who has color of title only, is limited to that part in his actual occupancy. But if the true owner is not in actual possession of any part, and the intruder with color of title is in possession of a part, claiming the whole and exercising over the whole such acts of ownership as the circumstances allow, he will be held to have the constructive possession of all that his colorable title calls for. [Schultz v. Lindell, 30 Mo. 310; Norfleet v.

Hutchins, 68 Mo. 597; Gaines v. Saunders, 87 Mo. 557; Harbison v. School District, 89 Mo. 184; Ozark Plateau Land Co. v. Hays, 105 Mo. 143.]

Where a claim to land is based on adverse possession for the statutory period, without color of title, there is no constructive possession to be considered; actual possession only will avail the claimant.  Whether or not certain conditions constitute actual possession is a question of law; whether or not those conditions exist is a question of fact.  The law on this subject is well expressed by SCOTT, J., in an early deci. sion of this court: "It is no easy matter to say what is an. adverse possession.  It is a question compounded of law and fact, and every case in which it is invoked must be de-. termined by its own circumstances.  What is adverse possession is one thing in a populous country, and another thing in a sparsely settled one, and still a different thing in a town or village.  The law as stated by the Supreme Court of the United States, in the case of Ewing v. Burnet, 11 Pet. loc. ` cit. 53, and other cases, seems very appropriate to the circumstances of this (that) case—that to constitute an adverse possession there need not be a fence, building or other improvement; and it suffices for that purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute; that much depends upon the nature and situation of the property, the uses to which it is applied or to which the owner or claimant may choose to apply it; that it is difficult to lay down any precise rule in all cases, but that it may be safely said, that where acts of ownership have been done upon land, which from their nature indicate a notorious claim of property in it, and are continued sufficiently long, with the knowledge of an adverse claimant, without interruption or an adverse entry by him, such acts are evidence of an ouster of a former owner, and an actual adverse possession against him, provided the jury shall think that the property was not susceptible of a more strict or definite possession than had been so

taken and held; that neither actual occupation, cultivation or residence are necessary where the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim." [Draper v. Shoot, 25 Mo. 197.] And the same doctrine has since been frequently announced by this court. [Leeper v. Baker, 68 Mo. 400; Harper v. Morse, 114 Mo. 317; Pim v. City of St. Louis, 122 Mo. 654.]

An accretion becomes a part of the land to which it is built and follows whatever title covers the main land, whether it be title by deed or title by possession. In its nature it is not susceptible during its forming, of that kind of possession which distinguishes the occupation of dry land. But it attaches to the dry land even while it is yet under water, and belongs to the owner of the land and is in the actual possession of him who holds the actual possession of the main land. If the main land is in fact unoccupied, it is in the constructive possession of the owner of the true title, and with it goes the constructive possession of the forming accretion. But if the main land is held in adverse possession to the true owner, he is not in constructive possession of the accretion, and since the accretion in its formative state is not susceptible of actual occupancy in the sense of a *pedis possessio*, the *indicia* of the actual possession of him who holds the main land are extended over the forming accretion, and bring it within his actual possession. And it is not necessary that such possession of the accretion should be held for ten years to give the possessor title, because title to it follows title to the main land, and when the latter is held under the conditions and for the length of time required by law to vest the title in the possessor, the title to the accretion follows, even though the deposit had been made but a year or a day.

One who acquires title to the main land by ten years adverse possession, acquires title to river deposits made and making on his front before and during the period in which his possessory title was forming. The accretion grows into the land and grows into the title of him who holds the land as the title itself grows, and when the title to the main land has become perfect it extends over the accretion however recent its formation. [Campbell v. Laclede Gas Light Co., 84 Mo. 352.]

II. The first assignment of error is the refusal of the court to give the instruction asked at the close of the plaintiff's evidence to the effect that he could not recover.

The plaintiff's deeds offered in evidence conveyed the legal title to the land to plaintiff's father, if the land sued for is embraced in the calls of those deeds, and the evidence of the witness Rapp tends to prove that it was. The partition deed from Lupe to Monks limited the land therein conveyed on the east by the old bank of the Mississippi; but title to all east of that line, that is from the old bank to the river, remained in Lupe and Monks by virtue of their deeds from Yellitch, and was included in the deed from them to plaintiff's father in 1880. Plaintiff's father died in February, 1881, when plaintiff was six years old, and the testimony tended to show that by inheritance from his father and deed from his sister he became the owner of all the title his father had at the time of his death. The court therefore properly refused the instruction looking to a nonsuit.

1. The first instruction given for plaintiff was erroneous. It assumes that plaintiff is the owner of the land and entitled to the possession unless defendants have sustained their plea of the statute of limitations. As we have already seen, although there was no denial of plaintiff's petition in the answer, yet both parties and the court tried the case on the theory that the plaintiff's title was in issue, and plaintiff assumed the burden of proving it and introduced exactly the same evidence that he would have introduced if his petition

had been denied, and this court will consider the case in the
same light. It was the duty of the court to construe the
deeds and instruct the jury as to their effect, and if the deeds
in themselves contained all that was necessary to make out
the plaintiff's title, the court should have so instructed the
jury and that the plaintiff was entitled to recover possession
unless his right of action was barred, following with appro-
priate instructions to enable them to understand whether or
not under the evidence the plaintiff's action was barred.
[Wilkerson v. Eilers, 114 Mo. 245.]

But the plaintiff's title rested not alone in his deeds;
whether or not the land in dispute was embraced in the calls
of his deeds depended on the oral testimony of witnesses; so
also did his title of inheritance, although on that point there
was no dispute. The court should have left the jury to weigh
the oral evidence.

It is also urged against this instruction that it requires
defendants to prove a ten-years' possession in the lifetime of
plaintiff's father. It might possibly be liable to that construc-
tion, but if so it would be a misconstruction. The intention
doubtless was to say that the ten-years' possession should have
begun in the lifetime of plaintiff's father, and that was cor-
rect. If the adverse possession begun in the lifetime of
plaintiff's father it continued to run after his death against
the plaintiff, though a minor.

2.    The second instruction given for plaintiff was also
erroneous. It assumes, like the first instruction, the plain-
tiff's title and right to recover unless defendants establish
their right under the statute of limitations. But the most
serious error in it is that it directs a verdict for plaintiff for
all the land in dispute "not cleared, cultivated or fenced
prior to the death of William Benne, father of plaintiff, Feb-
ruary 23d, 1881." This limited the evidences of possession
and ostensible acts of ownership to the three acts of clearing,
fencing and cultivating. The evidence tended  to show

that when the possession under which defendants claim began, the land covered by it was on the bank of the river outside the levee and the river was within a few feet of the log house that evidenced the first habitation; that a road ran on the south line of the land in dispute, and when Benne bought in 1880 he assisted in surveying the land and measured up to that road and stopped. Suess under whom defendants claim was then in possession, and was present at the survey, and his occupancy, whatever it was, was visible to Benne. This road ran down to the river, and the inference that might be drawn from Suess' testimony was that that road was recognized by both as the boundary between them; whether that was so or not was a question for the jury. One in possession of the land as his own, the small piece that it was, the small value that it probably had, might well be content to let the road indicate his south line, and the river his east, without going to the labor of fencing it. It is not here intended to signify what, if any, weight should be given to those features of the case, but only to illustrate that a fence was not the only way in which the man in possession could indicate the limits of his claim. We have already seen that the law writers have been unable to lay down any precise rule prescribing what should constitute adverse possession. The circumstances of each case, the location and condition of the land must be taken into consideration and the alleged acts of ownership must be understood as directed to those circumstances and conditions.

This instruction is also subject to the criticism for its form of expression, like that in the first instruction, rendering it liable to be misconstrued into declaring that the possession must have continued ten years prior to the death of plaintiff's father.

There was no occasion for the statement in the instruction that the deeds therein mentioned gave defendants no

color of title, and it was calculated to mislead the jury to the prejudice of the defendants. The question of whether or not those deeds gave color of title to defendants was not in this case; they were not offered to show color of title, but to show that the defendants held by grant, the title that Suess had acquired, if any, by his adverse possession, and for that purpose they were valid deeds and competent evidence. The question as to color of title comes into a case of this kind when the defendants seek to draw to their actual possession of a part, the constructive possession of the whole tract embraced in their deed. But there was no claim of construct-ive possession here, there was a claim of possession beyond the indications of clearing, cultivating and fencing, but that claim was founded on what was claimed to be ostensible acts of ownership. It was not pretended that Suess went in under a deed. He testified that he bought from Murphy, but no deed was offered in evidence. The court rightly limited defendants to actual possession, though erred in giv-ing the jury to understand what was actual possession. The court could, however, have limited the defendants' claim to actual possession without declaring that defendants had no color of title. The term "color of title" occurring in a case depending on a question of adverse possession is very technical, and is not within the understanding of laymen. It was very liable to be interpreted by the jury to mean that defendants were mere trespassers with no title at all, and to prejudice them in the trial of the questions of fact submitted to them. But the law does not regard the man in possession, claiming to be the owner, in such unfavorable light. "Pos-session of real estate is *prima facie* evidence of the highest estate in the property, that is, a seizin in fee. . . . . Ejectment is a possessory action, and possession is always presumption of right, and it stands good, until other and stronger evidence destroys that presumption. This pre-sumption of right every possessor of land has, in the first

instance, and after a continued possession for the period prescribed by statutes of limitation, under pretense or claim of right, the actual possession ripens into a right of possession which will toll an entry." [Tyler on Eject. and Adv. Poss., p. 70.]

3. The third instruction contained the error of assuming the plaintiff's title as pointed out above in discussing the first, and limiting the evidences of possession to clearing, cultivating and fencing as pointed out in discussing the second instruction.

4. The fourth instruction repeats the errors contained in the preceding three.

The first instruction asked by the defendant which was modified and given does not sufficiently designate the land intended to be covered by it, since it only locates one line. It was probably intended to cover all of the land sued for lying north of the line specified in the instruction and was so understood, but it does not say so. But for that defect the instruction should have been given as asked. The modification made by the court denied the defendants any right to the accretion which attached to the land they claimed to have held since 1874. That was error. If defendants established their title by adverse possession to any part of the river bank, they were entitled to the deposits that the river had made on that bank before and during their occupancy down to the day of the trial.

The other two instructions given for defendant defining the term accretions and riparian proprietor's right to such, were correct. As this case is to be retried, the proposition therein stated that a riparian proprietor can not so extend his boundary lines as to diminish the river front or accretions of an adjoining riparian proprietor deserves a brief notice. It not infrequently occurs when the original boundary lines of adjoining riparian proprietors are not parallel that they would, if produced over an extensive accretion, result in

diminishing the rights of one to the increase of the other. The Rapp map in evidence in this case illustrates this. The land the plaintiff's father bought from Lupe and Monks in 1880, had, according to the Pitzman survey in 1867, several times as long a river front as the land now claimed by defendants had at that date. Assuming, for this purpose, that plaintiff and defendants are adjoining riparian proprietors, each is entitled to his share of the accretions in the proportion to the extent of his river front to that of the other. But . if the defendants be permitted to extend their boundary lines in the directions they point, they would in the distance now to be crossed very greatly lengthen their river front at the expense of the riparian rights of the plaintiff. If the line defendants claim as their southern boundary and division line with plaintiff be extended to the river, it would take nearly all the plaintiff's river front. If the defendants establish their title to the portion of the main land they claim, the accretion to it will go with it, but they are not entitled by extending the sides of their triangle to take in deposits that were made on the plaintiff's river front. [Crandall v. Allen, 118 Mo. 403.]

As to the instructions asked by defendant and refused:

1.   There was no evidence that defendants or those under whom they claim had been in such possession of the whole river front as would entitle them to all the land sued for, and for that reason the first refused instruction was properly refused.

2.   The second was properly refused; plaintiff's claim was not based on possession.

3.   The third was subject to the same objection as the first.

4.   The fourth is subject to the same objection as the second.

5 and 6.   The fifth and sixth were properly refused. The objections urged to those deeds we have already consid-

ered in our comments on the instruction asked looking to a nonsuit.

7.   It was for the jury and not the court to say whether or not the selling of willows to the Government under the circumstances was an open·act evincing ownership.

III.   The verdict rendered by the jury was not sufficiently certain.   A verdict should so describe the land intended to be recovered that the description copied into the writ will of itself show the sheriff the land he is to take from defendant and restore to plaintiff.   There can be no other description of the recovery in the judgment of the court than that in the verdict and there can be no other description in the writ.   If that is not sufficient, it can not be aided as was attempted in this case by having the county surveyor decide what the jury may have intended but failed to express.   The burden is on the plaintiff to furnish evidence of such character as to enable the jury to render  a  self-demonstrating verdict; if the evidence is not sufficient in that respect, there can be no verdict for plaintiff.

The judgment of the circuit court is reversed and the cause remanded to be retried according to the law as herein expressed.   All concur.