Maurice SEIGLE, Dick Jones, and Hoy M. Clark, Appellants,

v.

S. O. THOMAS a/k/a Sam Thomas and Bonnie K. Thomas, Appellees.

No. 51019.

Supreme Court of Oklahoma.

Jan. 20, 1981.

Charles Nesbitt, Oklahoma City, for appellants.

Robert J. Hays, Van Dycke, Hays & Dabney, Inc., Chickasha, for appellees.

WILLIAMS, Justice.

This appeal, concerning ownership of accreted lands arises from a quiet title action between appellants, record owners of the surface and mineral interests in a riparian tract, and appellees, claimants by adverse possession of both the surface and mineral estates in the above mentioned accretions.

The area in question is on the south side of the South Canadian River and according to the original Government Survey is located within the Northwest Quarter (NW/4) of Section 10, Township 11 North, Range 9 West, Indian Meridian (hereinafter 10–11–9) in Canadian County, Oklahoma. For ease of terminology, the parties throughout this matter have referred to this parcel as being comprised of four tracts, A, B, C, and D, see illustration. Tract A is the original riparian land (designated lot 4) of which appellants are the record owners of the several mineral interests.[1] The remaining area, identified as tracts B, C, and D, were formed by accretion and are situated to the east of tract A.

---

1. This court is not unaware of the general principle that holds where there has been a severance of minerals from ownership of the surface, adverse possession of the surface is not adverse possession of the minerals. *Deruy v. Noah*, 199 Okl. 230, 185 P.2d 189 (1947); *Fadem v. Kimball*, 612 P.2d 287 (Okl.App.1979).

Recently in *Nilsen v. Tenneco Oil Co.*, 614 P.2d 39 (Okl.1980) this court held that several mineral interests were subject to loss or gain by virtue of accretion.

However, no argument in this case was raised by appellants based upon this rule, and indeed, it appears under the peculiar facts of this case that the conveyance of the surface by appellants took place apparently either subsequent to the adverse entry by Thomas on to tract C or after the passing of the limitation period. Therefore, our holding here does not take into consideration the effect a timely severance (prior to the entry of an adverse possessor) of the mineral estate from the surface estate would have upon the alteration of title to accretions by adverse possession.

Appellees are the record owners of lots 6, 7, and 8 in 10–11–9 in Canadian County, Oklahoma. These lots are located to the south and east of tract A (lot 4) and south of tracts B, C, and D. According to evidence contained in the record, it appears that appellee, Sam Thomas, erected a first fence around his original property including lots 6, 7, and 8 shortly after he purchased it in approximately 1950. He testified this fence ran to a point some 30 yards south of the river.

In 1953, acting under the impression that the accretion which had occurred to both the northward and eastward belonged to him, Thomas built a second fence extending the fence along his western boundary line northward to a point within 30 steps of the river, enclosing that area of accretion labeled tract C.

In approximately 1973, appellee Thomas again extended his fence northward towards the river and attempted to encircle that portion of accreted lands, some of which had occurred since 1953 and which in large part is contained in the area identified as tract D. This dispute arose shortly thereafter.

By stipulations before the trial court, the parties agreed that only tracts C and D were the contested areas. Defendant Thomas' evidence showed beyond controversy that he exercised possessory control over area D, pasturing it, repeatedly bulldozing over ditches washed out, and cleaning out undergrowth.[2] The trial court ruled that title to the surface and minerals of tracts C and D should be quieted in the defendants, appellees. The trial court determined ap-

pellees had been "in open, exclusive, continuous, hostile and adverse possession of tract C" for the required period.[3] It further found that tract D accreted to tract C for ownership purposes, and "that title to accreted land follows the title of riparian land to which it is attached regardless of whether the latter title is acquired by deed or adverse possession."

From that decision, the appellants have perfected their appeal. They state they do not challenge that portion of the decision of the trial court holding appellees acquired title by adverse possession to tract C, but rather, they urge the trial court erred when it held appellees acquired title to tract D.

We recently stated:

"In a case of equitable cognizance, this court must examine the record and weigh the evidence and the judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence. As a quiet title action is one of equitable cognizance, the trial court's determination must be left undisturbed unless, after examining the entire record, it is clearly against the weight of the evidence." *Nilsen v. Tenneco Oil Co.*, 614 P.2d 36, 39 (Okl.1980).

Appellants make two main assertions of error. First, that the parties' stipulation that tract D accreted to tract A prevents appellees from claiming title to tract D. Second, appellants contend they were in constructive possession of tract D because they were in actual possession of other portions of their land, tracts A and B. They say tract D had a common border with both tracts B and C and that tract D's formation

---

**2.** Testimony in the record indicates that appellees had posted tract D and "told a lot of hunters to get off."

The testimony of appellee, Sam Thomas, was of effect that this area occasionally flooded. Subsequent to at least one such flood he said he rented a bulldozer and filled up ditches which had washed out. Further testimony was that he cleaned out undergrowth from the area as the river moved and that prior to fencing tract D he had the county commission bulldoze this area.

In response to questioning by appellants'-plaintiffs' attorney concerning why he removed

this last fence (built in 1973), appellee replied he did so at the urging of his son who was fearful the new posts and wire used in this fence would be removed by the appellants' recent grantee of the surface (if it determined tract D belonged to appellants). Nevertheless, appellee steadfastly maintained throughout his testimony that this area belonged to him.

**3.** An action to prevent acquisition of real property by adverse possession without color of title must be brought within fifteen years. 12 O.S.1971 § 93.

had begun before appellees gained title to tract C. Therefore, they assert under Oklahoma case law which provides title to accretions belongs in the rightful owners of the land to which the accretions attach, title to D should have been quieted in the appellants.

Appellants' first proposition rests for support upon their contention that a remark made by their trial counsel (who we note is not the same as their appellate counsel) referring to lines on an exhibit (see illustration) depicting the area in controversy was a stipulation by the parties that tracts B, C, and D had accreted to tract A. The statement made by appellant's attorney at the trial level was "And this is for simply a convenience for the lawyers and the court other than the fact that the lines shown by the engineer represents the accretion to lot 4 [tract A]."

Immediately thereafter defendants'-appellees' attorney replied, "Not that the accreted land is the plaintiffs by stipulation."

We find the trial court's determination that the stipulations in the transcript were of effect that the questions to be decided were whether or not defendants-appellees had acquired title to tract C by adverse possession; and if so, did area D accrete to it.

Our determination, after a complete examination of the stipulation transcript, is that the trial court's ruling was not contrary to the pretrial stipulations made by the parties and that appellants' first contention of error is without merit.

We now turn to appellants' second proposition. They cite two Oklahoma cases, *Johnson v. Butler*, 206 Okl. 632, 245 P.2d 720 (1952), and *Briggs v. Sarkeys*, 418 P.2d 620 (Okl.1966) which they say hold that accretions become part of the land to which they attach. They also rely upon *Dougherty v. Looney*, 108 Okl. 279, 236 P. 583 (1923) for the proposition that where the true owner is in actual possession of one part of his land and an intruder occupies another part, the owner will be held to be in constructive possession of all that part not in actual occupancy.

On the basis of these cases, appellants contend "the rightful owner of land possessed by an adverse claimant retains title to accretions thereto formed during the limitation period." They state, "Since the appellants constructively possessed the accretions and the appellees had no actual possession of them, title to the accretions lies in the appellants." They assert further that "a claimant [by adverse possession] must perform the same actions to claim title to the accretions as he must perform to claim the land to which the accretions attached."

No Oklahoma decisions have been cited by the parties as to whether or not accretions follow title to the mainland in situations of adverse possession, nor have we found any primary Oklahoma authority in our research. However, other jurisdictions have considered similar fact questions and those decisions warrant discussion here.

The Missouri Supreme Court in *Benne v. Miller*, 149 Mo. 228, 50 S.W. 824 (1899), a case involving a dispute over an accretion formed by Mississippi River deposits, noted the ordinary rule applied to situations of adverse possession was that,

"Where a claim to land is based on adverse possession for the statutory period without color of title, there is no constructive possession to be considered; actual possession only will avail the claimant. Whether or not certain conditions constitute actual possession is a question of law; whether or not those conditions exist is a question of fact."

The Missouri Court there added, however, that the extent and degree of those visible and notorious acts necessary (over the period of time required by statute) to establish adverse possession could vary depending upon the nature and condition of the property involved.

That court thereafter specifically addressed itself to adverse possession of accreted land and stated:

"An accretion becomes a part of the land to which it is built, and follows whatever title covers the main land,

whether it be title by deed or title by possession. In its nature it is not susceptible, during its forming, of that kind of possession which distinguishes the occupation of dry land. But it attaches to the dry land even while it is yet under water, and belongs to the owner of the land, and is in the actual possession of him who holds the actual possession of the main land. If the main land is in fact unoccupied, it is in the constructive possession of the owner of the true title, and with it goes the constructive possession of the forming accretion. But, if the main land is held in adverse possession to the true owner, he is not in constructive possession of the accretion; and, since the accretion in its formative state is not susceptible of actual occupancy in the sense of a pedis possessio, the indicia of the actual possession of him who holds the main land are extended over the forming accretion, and bring it within his actual possession."

Turning its attention to the effect of the limitation period upon accretions, the court continued:

"And it is not necessary that such possession of the accretion should be held for 10 years to give the possessor title, because title to it follows title to the main land; and when the latter is held under the conditions and for the length of time required by law to vest the title in the possessor, the title to the accretion follows, even though the deposit had been made but a year or a day. One who acquires title to the main land by 10 years' adverse possession acquires title to river deposits made and making on his front before and during the period in which his possessory title was forming.

The accretion grows into the land, and grows into the title of him who holds the land as the title itself grows, and when the title to the main land has become perfect it extends over the accretion, however recent its formation."

In *Rieke v. Olander*, 207 Kan. 510, 485 P.2d 1335, 1336 (1971), a Kansas case involving accretion to land claimed by adverse possession, the supreme court of that state in the first syllabus of its decision stated:

"Absent compelling reasons to the contrary, title to accretion land follows the title of the riparian land to which it is attached regardless whether the latter trial was acquired by deed or adverse possession, and one who has acquired title to land by adverse possession is entitled to any accretions thereto—regardless of the time of their formation." [4]

We recognized in *Sears v. State*, 549 P.2d 1211 (Okl.1976) that, "What constitutes adverse possession depends upon circumstances of particular case, as measured by judgment of reasonable men. Such determination in a given case must largely depend on situation of parties, size and extent of land, and purpose for which it is adapted."

The trial court's determination that appellees' acts towards tract C were of such character that they acquired title by adverse possession over that parcel would also under the viewpoint expressed in *Benne* establish their title to the accretions thereto (tract D).

We determine the Oklahoma decisions relied upon by appellants, while correct under their respective facts, are distinguishable from the situation now before us.[5]

---

4. See *Bellefontaine Imp. Co. v. Neidringhause*, 181 Ill. 426, 55 N.E. 184 (1899), holding claimants under color of title acquired accretions also; and other cases cited in 3 Am.Jur.2d, Adverse Possession, § 203, p. 293 in support of the statement that: "One who has acquired title to land by adverse possession is entitled to any accretions thereto, regardless of the time of their formation." See also 2 C.J.S. Adverse Possession § 252, p. 992.

5. The same must also be said for the case of *Garrison Furniture Co. v. Southern Enterprises*,

245 Ark. 927, 436 S.W.2d 278 (1969), cited by appellants and involving a dispute over an island formed in the Arkansas River. The adverse claimant there contended the land in controversy formed as an island, not an accretion, and that its actual occupancy of a portion of the island was sufficient to establish title by adverse possession to the entire island. The Supreme Court of Arkansas disagreed. It determined the island formed as an accretion to the mainland which was in actual possession of its owners. Under the court's decision, the

In the case at bar, appellants have raised no objection to the trial court's decision that appellees had acquired tract C by adverse possession, but rather appear to agree with it. That tract appears without question to have been the mainland to which tract D attached.[6] We adopt that principle of law applied in *Benne*, supra, and followed by other jurisdictions, that, "One who acquires title to mainland by . . . adverse possession acquires title to river deposits made and making on his front before and during the period in which his possessory title was forming."

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and OPALA, JJ., concur.

SIMMS, J., concurs in result.

---

adverse claimant only acquired title to that area actually possessed.

6. Appellants referring to the attached illustration, argue that tracts B and D have a common boundary, line N 61° 00′ E, and allege that tract first began to form on this boundary.

The record in this case contains no evidence to support such a contention. We have noted that the drawing relied upon was for the convenience of the trial court and the attorneys. The same is true of the divisions marked and identified thereon. That line singled out by appellants apparently represents the result reached by a surveyor after application of the formula for division of accreted land formed against the separate property of several main land owners as set forth in *Goins v. Merryman*, 183 Okl. 155, 80 P.2d 268 (1938).

Presumably under the *Goins* rule, that area identified as tract D gives to the appellees a share of present bank line proportionate to that which existed when the former bank line was along tract C. The same would be true of those areas divided and identified as A and B. We find no merit to appellants' contention.